UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

```
------------------------------------------------------------x
CAPITAL TRANS INTERNATIONAL, LLC,          : Case No. 8:10-CV-529-T-30TGW
a Florida limited liability company,       :
                                           :
            Plaintiff,                     :
                                           :
        -against-                          :
                                           :
INTERNATIONAL PETROLEUM                    :
INVESTMENT COMPANY, a foreign company,     :
AABAR INVESTMENTS PJSC, a foreign          :
company, and TASAMEEM REAL ESTATE CO,      :
LLC, a foreign limited liability company,  :
                                           :
            Defendants.                    :
------------------------------------------------------------x
```

**DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT AND
MEMORANDUM OF LAW**

## DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

Defendants International Petroleum Investment Company ("IPIC"), Aabar Investments PJSC ("Aabar"), and Tasameem Real Estate Company, LLC ("Tasameem") (collectively "Defendants"), by and through undersigned counsel, move to strike Capital Trans International, LLC's ( "Plaintiff or "CTI") Amended Complaint as untimely pursuant to Federal Rule of Civil Procedure 15(a)(1) and to dismiss Plaintiff's Amended Complaint for lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state claims upon which relief can be granted pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), and (6), and on the basis of the doctrine of forum non conveniens.  In support of their request, Defendants submit the accompanying memorandum of law and the Declarations of David Forbes, sworn to May 6, 2010 ("Forbes Decl."), Mohamed Badawy Al-Husseiny, sworn to on July 5, 2010 ("Al-Husseiny Decl."), and Ali H. Ghosheh, sworn to on July 8, 2010 ("Ghosheh Decl.").

## MEMORANDUM OF LAW

The Amended Complaint is close to a total rewrite of the original Complaint.  First, Plaintiff asserts new theories of jurisdiction over the Defendants, some of which make little sense and none of which justify the exercise of jurisdiction by this Court.  Defendants, which are all Abu Dhabi residents and one (IPIC) which is an instrumentality of the Government of Abu Dhabi, had no contact with the United States or Florida in connection with this action. In fact, the only contact Plaintiff asserts is the wholly fortuitous fact that Plaintiff allegedly and unilaterally chose to perform services for Defendants from its office in Florida—rather than from the United Arab Emirates, where all of its contacts with Defendants occurred and

where it also maintains an office.  This allegation alone is insufficient to justify eliminating IPIC's immunity from suit or exercising jurisdiction over Aabar or Tasameem.

Second, Plaintiff completely revises its allegations with respect to the purported agreements with Defendants that give rise to its claims.  Plaintiff initially asserted that it was engaged to find certain properties for acquisition by Defendants and that it was to be paid a commission upon the closing of these transactions.  Plaintiff also alleged, however, that no transaction closed, in effect invalidating all of its claims.  Recognizing that its causes of action for breach of the agreements had no merit, Plaintiff now alleges that it was owed commissions simply upon naming properties that met certain vaguely-stated investment objectives, regardless of whether Defendants decided to pursue these transactions—which, according to the Amended Complaint, they did not.  Plaintiff also adds claims based on a $30 million oral contract—which it completely failed to mention in its initial pleading.  Plaintiff's new version of the facts defies common sense and its attempt to avoid the inevitable dismissal of this case is futile.

The Amended Complaint should be dismissed in its entirety on the following grounds:

First, the Amended Complaint should be stricken as untimely pursuant to Fed. R. Civ. P. 15(a)(1).

Second, Plaintiff cannot establish personal jurisdiction over Tasameem or Aabar (which, contrary to Plaintiff's allegations, is not an instrumentality of the Government of Abu Dhabi) under either the Florida Long-Arm Statute or the Due Process Clause.  Neither

of these Defendants had any presence in nor contact with Florida, as detailed in the Forbes and Al-Husseiny Declarations.

Third, Plaintiff cannot rebut IPIC's presumptive immunity from suit under the Foreign Sovereign Immunities Act (the "FSIA").  Plaintiff has failed to allege any facts that would support a finding that IPIC engaged in commercial activities or acts in the United States sufficient to support the exercise of subject matter jurisdiction by this Court under the commercial activities exception to the FSIA.

Fourth, the allegations in the Amended Complaint fail to satisfy basic pleading standards.  The Amended Complaint consists almost entirely of vague, conclusory, and internally inconsistent allegations that are insufficient to establish the fundamental elements of the causes of action asserted.  In some cases, the allegations are contradicted by the documents referred to in the Amended Complaint (which Plaintiff has not attached).[1] Moreover, those allegations that are well-pled fail to state any claim that can be considered "plausible."

Fifth, the Amended Complaint should be dismissed on the basis of forum non conveniens.  The United Arab Emirates is an adequate and more appropriate forum for determination of this matter, which involves an instrumentality of that Government and purported agreements entered into in that country that have little or no connection to this forum.

---

[1] Documents referred to but not attached as exhibits to the Amended Complaint may be relied upon by this Court.  The Plaintiff "cannot escape a motion to dismiss by *not* attaching pertinent documents to the complaint." *Brooks v. Blue Cross & Blue Shield of Fla.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal.").

## STATEMENT OF FACTS

### 1.    The Defendants

IPIC is a foreign investment company that has its principal place of business in Abu Dhabi, United Arab Emirates ("UAE").  (Forbes Decl. ¶ 2; Amended Complaint ("Am. Compl.") ¶ 2.)  It is wholly-owned by the Government of Abu Dhabi, and is organized as an instrumentality of that government.  28 U.S.C § 1603(b).  (Forbes Decl. ¶ 2; Am. Compl. ¶ 2.)

Tasameem is a foreign investment company, organized under the laws of Abu Dhabi and having its principal place of business there.  (Forbes Decl. ¶ 22.)

Aabar is a public joint stock company with its principal place of business in Abu Dhabi.  It is listed on the Abu Dhabi Securities Exchange and subject to the general corporate laws of the UAE.  (Al-Husseiny Decl. ¶¶ 2, 5.)  75.5% of Aabar's shares are owned by IPIC, and 24.5% are owned by the public.  (Id. ¶ 2.)  Aabar engages in commercial investing activities on behalf of its shareholders.  (Id. ¶ 3.)  It does not perform a public activity, employ public servants, or receive governmental protections or benefits, and it is not supervised or guaranteed by the Abu Dhabi government.  (Id. ¶¶ 4-5.)  Aabar's business is overseen by a five-member Board of Directors, each of whom are appointed either by shareholder vote or by existing Board members.  (Al-Husseiny Decl. ¶ 6.)

None of the Defendants has ever been a resident or citizen of Florida or has ever had an office or place of business in Florida.  (Forbes Decl. ¶¶ 3, 13, 23; Al-Husseiny Decl. ¶ 7.)  None of the Defendants has ever been licensed to do business in Florida, and none has, or has ever had, any property, leases, or any other assets in Florida.  (Forbes Decl. ¶¶ 4, 14, 24; Al-

Husseiny Decl. ¶ 7.)  The Defendants have no employees, officers, agents, or representatives in Florida, have never recruited an employee in Florida, or has ever sent employees to Florida on its behalf.  (Forbes Decl. ¶¶ 5, 15, 25; Al-Husseiny Decl. ¶ 7.)  None of the Defendants has ever had any subsidiaries or affiliates that conduct business in Florida. (Forbes Decl. ¶¶ 6, 16, 26; Al-Husseiny Decl. ¶ 7.)  The Defendants have never held a meeting of their Boards of Directors or shareholders in Florida, and none of the Defendants are required to maintain a registered agent for service of process in Florida.  (Forbes Decl. ¶¶ 7-8, 17-18, 27-28.)  None of the Defendants has ever been party to a suit in Florida.  (*Id.* ¶¶ 8, 18, 28.)

None of the Defendants has ever been required to pay sales, property, or any other taxes in Florida or to Florida governmental agencies.  (*Id.* ¶¶ 9, 19, 29.)  None of the Defendants have any financial accounts in Florida or control any investments with a significant presence in Florida.  (*Id.* ¶¶ 10, 20, 30; Al-Husseiny Decl. ¶ 7.)  None of the Defendants has ever made any regulatory filings in Florida or held any license issued by a Florida regulatory agency.  (Forbes Decl. ¶¶ 11, 21, 31.)

## 2.    The Defendants' Contacts with CTI

Between December 2008 and July 2009, Fahdi Kantar, the alleged Chief Executive Officer of CTI, met with representatives of the Defendants on several occasions, but only in Abu Dhabi or, on one occasion, in Saudi Arabia (and never in Florida).  (Forbes Decl. ¶ 32.) There were no meetings between representatives of the Plaintiff and the Defendants in Florida.  (*Id.*)  All of the documents referred to in the Amended Complaint that were signed by representatives of the Defendants were signed in Abu Dhabi, not Florida.  (*Id.* ¶ 34.)  Mr.

Kantar instructed the Defendants to reach him by means of his mobile phone, which had a UAE country code. (*Id.* ¶ 33.) Defendants simply had no contact with Florida.

**3.      Procedural History**

On or about February 26, 2010, Plaintiff filed a 32 count Complaint against Defendants. (Dkt. No. 1.) On May 10, 2010, Defendants filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(5), (2), and (6). (Dkt. No. 12.)

On June 9, 2010, Plaintiff filed its Amended Complaint. (Dkt. No. 19.) The Court issued an order on June 11, 2010, denying Defendants' Motion to Dismiss as moot. (Dkt. No. 21.)

<u>**ARGUMENT**</u>

**I.      THE AMENDED COMPLAINT SHOULD BE STRICKEN AS IT IS UNTIMELY**

Plaintiff filed the Amended Complaint on June 9, 2010, more than 21 days after service of the Motion to Dismiss on May 10, 2010, in violation of Fed. R. Civ. P. 15(a)(1).[2] Since Plaintiff did not obtain the written consent of Defendants or leave of court to file the Amended Complaint, the Amended Complaint is a nullity. *Hoover v. Blue Cross & Blue Shield of Ala.*, 855 F.2d 1538, 1544 (11th Cir. 1988) ("In general, if an amendment that

---

[2] Rule 15(a) of the Federal Rules of Civil Procedure states in relevant part:

> (1) A party may amend its pleading once as a matter of course within:
>
> > (A) 21 days after serving it, or
> >
> > (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
>
> (2) In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.

cannot be made as of right is served without obtaining the court's leave or the opposing party's consent, it is *without legal effect and any new matter it contains will not be considered unless the amendment is resubmitted for the court's approval*.").[3]   Even if Plaintiff belatedly seeks leave to amend the Complaint, leave should be denied because, as demonstrated more fully below, the amendments are futile.  *Drury v. Countrywide Home Loans, Inc.*, No. 6:08-CV-152, 2008 WL 2131977, at *1 (M.D. Fla. May 21, 2008) (leave to amend is properly denied as futile "[i]f the amended complaint could not survive Rule 12(b)(6) scrutiny")(citations omitted).

## II.   THE COURT LACKS PERSONAL JURISDICTION OVER AABAR AND TASAMEEM

Plaintiff now asserts that jurisdiction over Aabar is authorized pursuant to 28 U.S.C. § 1330(a), which grants district courts original jurisdiction over "foreign states" as defined in the FSIA.[4]   (Am. Compl. ¶ 5.)   *See* 28 U.S.C. § 1603(a)-(b) (defining "foreign states"). Plaintiff continues to assert jurisdiction over Tasameem under Section 48.193(1)(a), Fla. Stat. (*Id.* ¶ 15.)   The exercise of jurisdiction by this Court over either Aabar or Tasameem would be inappropriate under any theory.   First, Aabar is not an instrumentality of a foreign state and is not subject to jurisdiction under the FSIA.   Second, neither Aabar nor Tasameem is subject to jurisdiction under the Florida Long Arm Statute or the Due Process Clause.  *Wynn*

---

[3] Plaintiff maintains that it was granted an extension of time to file its Amended Complaint.  (Plaintiff's Memorandum in Opposition to Defendants' Renewed Motion to Stay Discovery, filed June 29, 2010, Dkt. No. 25, at Section II.)  Defendants, however, agreed to an extension of time only "to respond to" Defendants' Motion to Dismiss, and not to amend the Complaint.  (*Id.*)

[4] Under the FSIA, once subject matter is established, personal jurisdiction is also deemed to exist if service has been properly made.  28 U.S.C. § 1330(b).  Plaintiff has not alleged that Aabar was properly served in accordance with the FSIA, 28 U.S.C. § 1608.

*v. Davidson Design & Dev., Inc.*, No. 3:09-CV-446, 2009 WL 4610924, at *2 (N.D. Fla. Dec. 1, 2009) (the exercise of jurisdiction over defendants under the Florida Long Arm Statute is only proper if it satisfies the Due Process Clause).[5]

As set forth in the Forbes and Al-Husseiny Declarations, neither Aabar nor Tasameem has any presence in Florida whatsoever.  They do not own assets or property in Florida and they do not conduct business in Florida, either directly or indirectly, through subsidiaries or agents.  (Forbes Decl. ¶¶ 13-16, 23-26; Al-Husseiny Decl. ¶ 7.)  Moreover, none of their contacts with Plaintiff in connection with the alleged agreements took place in Florida and none of the alleged agreements relate to property located in Florida.  (Forbes Decl. ¶¶ 32-34.)  The only alleged connection with Florida related to Plaintiff's claims is the fact that Plaintiff unilaterally decided to perform work from its Florida office, as opposed to its office in the United Emirates or any other location.  (A true and correct copy of excerpts from CTI's home page, http://www.cticement.com/, last accessed on July 8, 2010, is attached hereto as Exhibit ("Ex.") A.) (noting that Plaintiff maintains an office in the UAE,[6] as well as several other locations, and that its representatives speak Arabic.)  Accordingly, the exercise of jurisdiction over Aabar or Tasameem by this Court would be improper.

### A.     Aabar is Not an Instrumentality of the Government of Abu Dhabi

Pursuant to 28 U.S.C. § 1603(b)(2), an instrumentality of a foreign state is defined, *inter alia*, as any entity:

---

[5] Since Aabar is not subject to the FSIA, this Court can only exercise personal jurisdiction over it under the Florida Long-Arm Statute.  Although Plaintiff does not allege jurisdiction over Aabar on this basis, Defendants will nonetheless demonstrate that the allegations in the Amended Complaint do not support the exercise of personal jurisdiction over either Tasameem or Aabar pursuant to Section 48.193(1)(a), Fla. Stat.

[6] Abu Dhabi and Dubai are two of the seven Emirates of the United Arab Emirates.

which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof.

Aabar does not satisfy this requirement. First, a majority of Aabar's shares are not owned directly by the Government of Abu Dhabi. Aabar, which is a publicly listed stock company, is owned 75.5% by IPIC and 24.5% by the public. (Al-Husseiny Decl. ¶ 2.) It is well settled that a foreign sovereign's indirect ownership of a corporation through a wholly-owned parent is insufficient to confer "instrumentality" status. *Dole Food Co. v. Patrickson*, 538 U.S. 468, 477 (2003) (holding that ownership through a corporate parent that is wholly-owned by a foreign sovereign is insufficient to satisfy the "ownership" test under 28 U.S.C. § 1603(b)(2)); *Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*, 651 F. Supp. 2d 155, 174 (S.D.N.Y. 2009) (finding that 64.8% ownership by the Abu Dhabi Investment Counsel, a government instrumentality, did not constitute majority ownership by a foreign government for purposes of the FSIA).

Second, Aabar is not an organ of a foreign state for purposes of Section 1603(a)(2). Courts consider the following criteria in making this determination: (1) whether the foreign state created the entity for a national purpose; (2) whether the foreign state actively supervises the entity; (3) whether the foreign state requires the hiring of public employees and pays their salaries; (4) whether the entity holds exclusive rights to some right in the foreign country; and (5) how the entity is treated under foreign state law. *Filler v. Hanvit Bank*, 378 F.3d 213, 217 (2d Cir. 2004); *EIE Guam Corp. v. Long Term Credit Bank of Japan, Ltd.*, 322 F.3d 635, 640 (9th Cir. 2003); *Kelly v. Syria Shell Petroleum Dev.*, 213 F.3d 841, 846 (5th Cir. 2000); *see also Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S.

224, 245-48 (2007) (Breyer, J. dissenting) (relying on similar factors in arguing that a British Columbia-run hyrdo-electric company qualified as an "organ").

Aabar is a private company engaged in commercial investing activities on behalf of its shareholders. (Al-Husseiny Decl. ¶¶ 3-4.) It does not perform a public activity, employ civil servants, receive the benefit of government support, or enjoy any exclusive right or protection granted by the government. (*Id.* ¶ 4.) Aabar is subject to the general corporate laws of the UAE and its business is overseen by a five-member Board of Directors, each of whom is appointed by shareholder election or other Directors, not by the government. (*Id.* ¶¶ 5-6.) Furthermore, the government does not supervise Aabar's affairs or guarantee its performance in any way. (*Id* ¶ 5.)

### B.   Aabar and Tasameem Are Not Subject to Personal Jurisdiction Under Section 48.193(1)(a) of the Florida Long-Arm Statute

Section 48.193(1)(a), Fla. Stat. permits personal jurisdiction over non-resident defendants "operating, conducting, engaging in, or carrying on a business or business venture or having an office or agency" in Florida. A plaintiff invoking the Court's jurisdiction under this Statute bears the initial burden of alleging sufficient material facts to make out a *prima facie* case that personal jurisdiction exists. *Wynn*, 2009 WL 4610924, at *2. A *prima facie* case cannot be established through purely conclusory allegations. *Steinberg v. A Analyst Ltd.*, No. 04-CV-60898, 2009 WL 3055226, at *4 (S.D. Fla. Sept. 21, 2009). Plaintiff fails to

make even a *prima facie* showing that the exercise of jurisdiction over Aabar or Tasameem is proper under this Section.[7]

The critical inquiry in determining whether a defendant is operating or engaging in a business for purposes of Section 48.193(1)(a) is whether the sum of the collective activities of the defendant "show a general course of business activity in the state for pecuniary benefit." *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996).  Factors relevant to this analysis include the presence and operation of an office in Florida, the possession and maintenance of a license to do business in Florida, the number of Florida clients served, and the percentage of overall revenue gleaned from Florida clients. *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005).

None of these factors is present here.  Neither Aabar nor Tasameem have an office or agent in Florida, a license to do business in Florida, or serve clients in Florida.  (Forbes Decl. ¶¶ 13-16, 23-26; Al-Husseiny ¶ 7.)  No representative of the companies dealt directly with Plaintiff's Florida office.   (Forbes Decl. ¶¶ 32-34.)   All personal contact between Plaintiff and representatives of Aabar or Tasameem occurred in Abu Dhabi or Saudi Arabia.  (*Id.* ¶ 32.)  Plaintiff did not complete a transaction for Aabar or Tasameem in Florida (or anywhere else), and none of the alleged agreements contemplated that Plaintiff would solicit investments in Florida for Aabar or Tasameem.  The purported investments were for property

---

[7] Plaintiff does not even attempt to make a showing of general jurisdiction over Aabar or Tasameem pursuant to Section 48.193(2), Fla. Stat.  The Amended Complaint does not allege facts that demonstrate that either Aabar or Tasameem engaged in "substantial and not isolated activity *within*" Florida.  Section 48.193(2), Fla. Stat. Aabar's alleged contacts with other States are not relevant to this analysis.  (Am. Compl. ¶ 10.)

or assets owned by entities or individuals in Saudi Arabia, the United Kingdom, and Russia, among other places.  (Am. Compl. ¶¶ 39, 65, 72.)

In support of the exercise of jurisdiction Plaintiff makes only the conclusory allegations that "Defendants agreed to make payment to CTI in the State of Florida" (Am. Compl. ¶ 14.) and that CTI purportedly "performed services for Defendants" in Florida.  (*Id.*; *see also* ¶¶ 28, 34, 60, 66, 73, 80.)   As an initial matter, the generalized allegation that "Defendants" agreed to make payments in Florida should be disregarded.  Plaintiff does not even allege which Defendants agreed to make payment to CTI in Florida, nor does it identify which agreements required payment in Florida.  *Lane v. Capital Acquisition & Mgmt Co.*, No. 04-60602-CIV, 2006 WL 4590705, at *5 (S.D. Fla. Apr. 14, 2006) (dismissing a complaint for failing to meet minimum pleading standards where plaintiff "lump[ed] all the defendants together in each claim and provid[ed] no factual basis to distinguish their conduct").[8]   Moreover, the only activities allegedly performed for Aabar or Tasameem that are described with any particularity were performed outside of Florida.  (*See* Am. Compl. ¶¶ 38-39, 43-48 (alleging that negotiations regarding the unconsummated FSHI transaction took place in Saudi Arabia).)   In any event, neither allegation shows that Defendants carried on a "general course of business activity" sufficient to satisfy Section 48.193(1)(a).   Even if Plaintiff's allegations had any factual support, they assert only that Aabar and Tasameem

---

[8] To the extent that Plaintiff's allegations suggest that this Court may treat the individual Defendants as a single entity for the purposes of finding jurisdictional contacts, these allegations are insufficient.  (Am. Compl. ¶ 13.) In order to support a finding that Defendants' jurisdictional contacts should be imputed to each other, Plaintiff must show that the Defendants are mere "alter egos" of one another.  *Davis v. Vinnell Corp.*, No. 4:06-CV-455, 2007 WL 2462010, at *3 (N.D. Fla. Aug. 27, 2007).  Plaintiff makes no effort to plead or prove that any of the Defendants was a "mere instrumentality" of another or engaged in "improper conduct" through use of another. *Id.* at *3 (citing these factors as indicating that a subsidiary is a mere "alter ego" of its parent).

entered into a few isolated agreements with Plaintiff to negotiate the acquisition of property located outside of Florida.  Without more, these allegations are insufficient to justify the exercise of jurisdiction by this Court.  *See Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249-50 (11th Cir. 2000) (foreign defendant's contract for computer services performed in Florida, standing alone, did not constitute conducting business for purposes of long-arm statute); *Bernardele v. Bonorino*, 608 F. Supp. 2d 1313, 1322-23 (S.D. Fla. 2009) (negotiating an agreement in Florida that is executed and performed out-of-state cannot constitute a general course of business in Florida); *Wallack v. Worldwide Mach. Sales, Inc.*, 278 F. Supp. 2d 1358, 1366 (M.D. Fla. 2003) (the fact that a foreign defendant contracts with a Florida resident, standing alone, does not support an inference that defendants operated or conducted a business or business venture in Florida);  *Horizon Aggressive Growth, L.P.*, 421 F.3d at 1167-68 (out-of-state auditing company that entered into an accounting services agreement with Florida resident was not "doing business in Florida"); *Dinsmore v. Martin Blumenthal Assocs., Inc.,* 314 So. 2d 561, 564 (Fla. 1975) (foreign defendant's agreement with a Florida broker for sale of stock in a foreign corporation "does not indicate a general course of business activity in this State").

###### C. Aabar and Tasameem Do Not Have Sufficient "Minimum Contacts" with Florida to Support Personal Jurisdiction

Even if the exercise of jurisdiction over Aabar and Tasameem would be appropriate under the Florida Long-Arm Statute—which it clearly is not—it cannot be justified under the Due Process Clause.  Under the Due Process Clause, jurisdiction is only proper if the foreign defendant has "minimum contacts" with the forum arising from conduct demonstrating that it "purposefully avail[ed]" itself of the privilege of conducting activities within the forum state,

thus invoking the benefits and protections of that state's laws. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985). Such contacts must be "purposeful" and not "random," "attenuated," or "fortuitous." *Id.* (citations omitted). In the case of a foreign defendant, the minimum contacts analysis is particularly important in recognition of the "unique burdens placed upon one who must defend oneself in a foreign legal system." *Asahi Metal Indus. Co v. Sup. Ct. of Cal. Solano County*, 480 U.S. 102, 114 (1987).

As discussed above, Plaintiff asserts that personal jurisdiction exists over the Defendants solely on the basis of its alleged isolated, short-term oral agreements with the Defendants—none of which were negotiated in Florida and none of which resulted in transactions by any of the Defendants in Florida. The property and assets allegedly sought by Tasameem and Aabar under their purported agreements with Plaintiff are not even held in the United States. The only contacts these Defendants had with Florida were alleged oral agreements with a Florida Plaintiff. Without more, the exercise of jurisdiction is improper. *Burger King*, 471 U.S. at 478 ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer is clearly that it cannot.").

Plaintiff does not allege that Aabar or Tasameem sought out Plaintiff in connection with any of these agreements. None of the alleged contacts arose out of any purposeful activity directed at Florida on the part of Aabar or Tasameem. The only contact that Plaintiff alleges that either of these Defendants has with Florida arises out of the wholly fortuitous fact that Plaintiff, who has offices in Florida and the UAE, as well as other locations, purportedly decided to perform work in Florida. (Ex. A.) Plaintiff's unilateral activities do

not constitute "minimum contacts" for purposes of Due Process.  *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State."); *Wallack*, 278 F. Supp. 2d at 1370 (a plaintiff's unilateral contacts with the forum state cannot be imputed to the non-resident defendant to satisfy the minimum contacts test); *Future Tech. Today*, 218 F.3d at 1251-52 (declining to exercise jurisdiction where the only contact defendant had with Florida was the fact that plaintiff, with whom defendant contracted for computer services, chose to perform services in Florida); *Dinsmore*, 314 So. 2d at 566 (it "would offend due process" to find that a non-resident defendant is doing business in Florida because the broker to whom the non-resident defendant gave a listing does business in Florida).  Accordingly, the Complaint should be dismissed as to Aabar and Tasameem in its entirety for failure to allege any basis for the exercise of personal jurisdiction over either of these Defendants.[9]

## III.    THE COURT LACKS SUBJECT MATTER JURISDICTION OVER IPIC

Plaintiff's attempt to assert jurisdiction over IPIC pursuant to the FSIA is similarly deficient.  (Am. Compl. ¶¶ 5-7.)  Here again, Plaintiff premises jurisdiction solely on its

---

[9] Plaintiff also attempts to assert jurisdiction over Tasameem under 28 U.S.C. § 1367.  (Am. Compl. ¶ 13.)  To the extent that Plaintiff is suggesting that all Defendants are subject to both personal and subject matter jurisdiction under Section 1367, it is clearly mistaken.  Section 1367 "permits a federal court to entertain claims over which it would have no independent basis of *subject matter jurisdiction*."  13D WRIGHT & MILLER, FED. PRAC. & PROC. JURIS. § 3567 (2010) (emphasis added).  Section 1367 has no application where, as here, diversity jurisdiction exists over Tasameem; nor is it an independent basis for finding personal jurisdiction. *Junquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1033 (D.C. Cir. 1997) (holding that the district court erred in ruling that it could exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over claims where "subject matter jurisdiction was established by reason of diversity of citizenship" and noting further that "Section 1367(a) does not apply to questions of personal jurisdiction"); s*ee also Gill v. Three Dimensions Sys., Inc.,* 87 F. Supp. 2d 1278, 1283-84 (M.D. Fla. 2000) (requiring plaintiff to plead facts sufficient to establish an independent basis for personal jurisdiction under state long-arm statute and the Due Process Clause where state law claims against pendant parties were brought in federal court under Section 1367).

allegations that it performed work in the United States, as opposed to the UAE or anywhere else that it maintains an office.

Under the FSIA, which provides the exclusive basis for obtaining jurisdiction over a foreign state and its agencies and its instrumentalities, a foreign state is presumptively immune from suit in United States courts unless Plaintiff has demonstrated that one of the statutory exceptions to sovereign immunity applies.  28 U.S.C. § 1605(a); *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 488 (1983).  Courts have long recognized that these exceptions should be construed narrowly "because sovereign immunity remains the rule rather than the exception and because courts should be cautious when addressing areas that affect the affairs of foreign governments."  *Liberian E. Timber Corp. v. Gov't of the Republic of Liber.*, 659 F. Supp. 606, 610 (D.D.C. 1987) (citation omitted).

To overcome the presumption of immunity, Plaintiff must prove that the conduct that forms the basis of its claims against IPIC falls within one of the statutorily defined exceptions.  28 U.S.C. § 1605(a); *Verlinden B.V*, 461 U.S. at 488.  Plaintiff alleges that IPIC "purposefully engaged CTI, a Florida company, to conduct in and from Florida, negotiations and provide acquisition support services on behalf of IPIC concerning IPIC's investment in, or acquisition of the assets of, United States Companies."  (Am. Comp. ¶ 7.)  Accordingly, Plaintiff appears to assert that IPIC's activities fall within the first two prongs of the "commercial activities" exception of 28 U.S.C. § 1605(a)(2), which states that a foreign sovereign will not be immune in a case:

> in which the action is based upon (i) a commercial activity carried on in the United States by the foreign state; (ii) or upon an act performed in the United States in connection with a commercial activity of a foreign state elsewhere; (iii) or upon an act outside the territory of the United States with a commercial

16

activity of the foreign state elsewhere and that act causes a direct effect in the United States.

As discussed more fully below, Plaintiff's allegations are completely insufficient to strip IPIC of the immunity to which it is presumptively entitled.[10]

### A. IPIC Has Not Performed Commercial Activities or Acts in Connection With a Commercial Activity in the United States

In order to determine whether the "commercial activity" exception under the first two prongs of Section 1605(a)(2) applies, a court must find that a significant nexus exists between the activities or acts of the foreign state forming the basis of the claims and the United States. *Guevara v. Rep. of Peru, Ministerio Del Inter*, No. 08-17213, 2010 WL 2546029 (11th Cir. June 18, 2010). For the purposes of this analysis, an action is "based upon" only those activities or acts of the foreign sovereign that "if proven, would entitle a plaintiff to relief under his theory of the case." *Saudi Arabia v. Nelson*, 507 U.S. 349, 357 (1993); *Dominican Energy Ltd. v. Dom. Rep.*, 903 F. Supp. 1507, 1512 (M.D. Fla. 1995). In making this determination, courts must focus on "the acts of the named defendant, not on other acts that may have had a causal connection with the suit." *Can-Am Int'l, LLC v. Republic of Trin. & Tobago*, 169 Fed. Appx. 396, 404 (5th Cir. 2006) (citation omitted); *see*

---

[10] Even if this Court could properly exercise jurisdiction over IPIC, the venue of this action is improper under the FSIA. The FSIA provides for venue in actions against instrumentalities: "(1) in any judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . or (3) in any judicial district in which the agency or instrumentality is doing business or is licensed to do business . . . ." 28 U.S.C. § 1391(f)(4). As demonstrated above, none of the events giving rise to Plaintiff's claims occurred in Florida. Plaintiff's unilateral decision to perform some of its services in Florida is not sufficient to satisfy this standard. *HME Providers, Inc. v. Heinrich*, 2010 No. 6:09-CV-2186, 2010 WL 653920 (M.D. Fla. Feb. 18, 2010) (noting that under Section 1391(a)(2), which sets forth an identical analysis for venue in diversity cases, the activities of the defendant, not the plaintiff, are relevant). Additionally, IPIC does not do business in Florida and has no assets, property, employees, or subsidiaries in Florida. (Forbes Decl. ¶¶ 3-6.) Accordingly, venue in this district is improper.

*also Verlidinden B.V.*, 461 U.S. at 489 (noting that Section 1605(a)(2) grants jurisdiction over foreign sovereigns for "actions based upon commercial activities *of the foreign sovereign* carried on in the United States or causing a direct effect in the United States").[11]

Plaintiff's causes of action in this case are all "based upon" purported agreements that IPIC allegedly entered into with Plaintiff to investigate possible investment opportunities, none of which IPIC ultimately pursued.  (Am. Compl. ¶ 7.)  Plaintiff does not assert that IPIC had a single contact with the United States which forms the basis of its claims, other than the fact the Defendants chose to perform work from its office in Florida.  In particular, Plaintiff does not allege that any of the purported agreements were negotiated in the United States, nor does it identify any acts carried on in the United States by IPIC in connection with these agreements.   IPIC operates in Abu Dhabi and the Defendants' alleged engagement of Plaintiff occurred in Abu Dhabi.   (Forbes Decl. ¶¶ 2, 32.)   All meetings between representatives of IPIC and Plaintiff were held in Abu Dhabi; all documents were signed in Abu Dhabi; and all telephone communication with Plaintiff was directed to a cell phone number with a UAE country code.  (*Id.* ¶¶ 32-34.)  None of the alleged agreements required that Defendants perform in Florida, or any other location.  Moreover, as Plaintiff repeatedly

---

[11] Plaintiff does not allege any "direct effect in the United States" sufficient to satisfy the third prong of Section 1605(a)(2).  Plaintiff's generalized and conclusory allegation that "Defendants agreed to pay it in Florida" is not sufficient.  (Am. Compl. ¶ 14.)  Plaintiff never once specifically alleges that IPIC agreed to pay it in Florida. *Lane*, 2006 WL 4590705, at *5 (dismissing a complaint for failing to meet minimum pleading standards where plaintiff "lump[ed] all the defendants together in each claim and provid[ed] no factual basis to distinguish their conduct").  Moreover, Plaintiff's unilateral contacts with the forum are equally insufficient to strip IPIC of immunity under this prong of Section 1605(a)(2).  *See Dominican Energy Ltd.*, 903 F. Supp. at 1514 (observing that to find that mere financial loss by a United States plaintiff strips a foreign sovereign of its immunity "would be to 'interpret Section 1605(a)(2) in a manner that would give the district courts jurisdiction over virtually any suit arising out of an overseas transaction in which an American citizen claims to have suffered a loss from the acts of a foreign state'") (citation omitted); *Nigerian Air Force v. Van Hise*, 443 So. 2d 273, 275 (Fla. 3d DCA 1984) (purported breach of contract, negotiated in Nigeria, with plaintiff who later became a Florida resident, did not "constitute an activity having a direct effect in the market place of the United States").

acknowledges, IPIC declined to participate in any of the proposed investment opportunities that would have brought IPIC into contact with the United States.  (Am. Compl. ¶ 30 (Inca Refinery LLC "never heard from . . . any representative of IPIC"); ¶ 36 (Jericho Energy Company "never heard from . . . any representative of IPIC"); ¶ 63 (IPIC "failed to follow through" with alleged sale of stock in Caterpillar and put the transaction "on the back burner").)  Accordingly, Plaintiff does not allege that IPIC had any contact with the United States, much less that IPIC carried on commercial business with substantial contact with the United States.

The fact that Plaintiff maintains an office in the United States, and alleges it performed worked there, is clearly not sufficient to strip IPIC of its immunity.  In *Can-Am Int'l,* the Fifth Circuit found, on similar facts, that the defendants had not engaged in commercial activity or acts in the United States for purposes of the FSIA.  169 Fed. Appx. at 408.  In that case, a United States financial consulting corporation brought breach of contract and quantum meruit claims against the Government of Trinidad and Tobago.  Plaintiff had been hired by the Government of Trinidad and Tobago to locate funding proposals, some of which were arranged through a United States insurance company.  *Id*. at 398.  All meetings between representatives of the plaintiff and the defendant occurred outside of the United States, and the foreign state never pursued the purposed financing opportunities in the United States.  Noting that all of defendant's relevant activities occurred outside the United States, the court found that plaintiff's causes of action were not based on any activities or acts that the Government of Trinidad and Tobago had carried on in the United States.  *Id*. at 406-08.  The court rejected plaintiff's allegation that its acts in the United States should be attributed

to defendants:  "[I]t is illogical that plaintiff's own acts create the required material connection underlying its cause of action."  *Id*. at 406.  The Court further noted that "[t]here are no cases to support the notion that investigating potential investment options constitute commercial activity under the FSIA."[12]  *Id.*

Courts in this Circuit have recognized that a plaintiff's unilateral actions in the United States cannot form the basis of the commercial activities exception.  *Samco Global Arms, Inc. v. Arita*, 395 F.3d 1212, 1218 (11th Cir. 2005) (upholding a district court's dismissal on the grounds of sovereign immunity where the contract underlying the claims was negotiated outside the United States and the "only tie…to the Unites States [was] the plaintiff"); *Fargo Weite Reisen v. Jam. Vacations Ltd.*, 790 F. Supp. 272, 276 (S.D. Fla. 1992) (declining to exercise jurisdiction over a foreign state sued in connection with a contract negotiated in Germany, despite that the fact the defendant "maintained an office in the United States, that the contract bore a United States address for [the defendant], and that four 'post contract execution' communications with [plaintiff] emanated from [defendant's United States] office"); *see also Dominican Energy Ltd.* 903 F. Supp. at 1514 (declining to exercise jurisdiction over a foreign sovereign accused of tortious interference with a government contract where all negotiations occurred abroad and the only reason that plaintiff's cause of action bore any relation to the United States was "the purely fortuitous fact that [plaintiff] is a

---

[12] Plaintiff does not allege any facts pursuant to which its own contacts in the United States can be imputed to Defendants for jurisdictional purposes. *See Can-Am Int'l*, 169 Fed. Appx. at 406 (rejecting plaintiff's attempt to impute its contacts to defendants for purposes of Section 1605(a)(2) where it failed to sufficiently allege the existence of any agency relationship).

United States corporation").  Accordingly, the Amended Complaint should be dismissed as to IPIC for failure to allege any basis for the exercise of subject matter jurisdiction.

## IV.    PLAINTIFF FAILS TO STATE A CLAIM AGAINST DEFENDANTS

As discussed more fully below, despite Plaintiff's attempt to rewrite the terms of the oral agreements, ignore the only written agreement between the parties, and re-characterize the documents that allegedly support its claims, its allegations are insufficient to state any claim against any of the Defendants.  Plaintiff's allegations are uniformly vague, conclusory, and internally inconsistent and should not be credited by this Court.  Moreover, the well-pled allegations fail to nudge the claim "across the line from conceivable to plausible."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007).

### A.    Plaintiff Fails to State a Claim Against Aabar With Respect to the FSHI Transaction (Counts VII-IX)

In a blatant effort to avoid dismissal, Plaintiff has radically altered its allegations with respect to the agreement it allegedly entered into with Aabar to arrange the acquisition of shares of FSHI from Kingdom Holdings, Inc. ("Kingdom").  Its causes of action against Aabar in the Complaint were all based upon an alleged breach of a written agreement (the "FSHI Agreement") which stated that Plaintiff would be paid a commission "upon completion of a transaction in which Aabar acquires 100% of FSHI."  (A true and correct copy of a letter dated March 10, 2009 from Mr. Al Qubaisi, agreed and accepted by Mr. Fahdi Kantar on March 11, 2009, is attached hereto as Ex. B.)  In the Amended Complaint, Plaintiff abandons its claim for breach of the FSHI Agreement because, as Plaintiff acknowledges, the transaction never closed.  (Am. Compl. ¶ 55.)  In an effort to revive its claims, Plaintiff now alleges breach of a different, never-before-mentioned oral agreement in

which "Mr. Al Qubaisi told Mr. Kantar that if CTI was able to 'get Prince Bin Tal [the Chairman of Kingdom] on the telephone willing to talk about selling Four Seasons,' he would pay CTI $30 million." (*Id.* ¶ 42.)  The FSHI Agreement that formed the basis of Plaintiff's claims is now described as "additional compensation." (*Id.* ¶ 45.)

In the context of this case, the newly-remembered claim that Aabar breached an oral agreement to pay $30 million for arranging a single phone call does not plausibly give rise to an entitlement to relief and should be dismissed. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1940, 1950 (2009) (observing that determination of whether a complaint states a plausible claim for relief is a "context-specific" task "requiring the reviewing court to draw on its judicial experience and common sense" and that if the "more likely explanations" of Plaintiff's allegations involve lawful, non-actionable behavior, the court should find that the plaintiff's claim is not plausible).  Under the terms of the FSHI Agreement, Plaintiff was to serve as "Aabar's point of contact with the owners of FSHI" and lead "preliminary negotiations." (Ex. B.)  If the transaction closed, Plaintiff would have earned a commission close to $30 million, consistent with the $2-$3.5 billion bids alleged in the Amended Complaint.  (Am. Compl. ¶¶ 47, 49.)  It defies common sense that Aabar would orally agree to pay $30 million to Plaintiff for initiating phone contact and then approximately ten days later, before any phone call or meeting occurred, enter into another agreement potentially worth $30 million with Plaintiff to act as its "point of contact."  Under this analysis, Aabar would in effect be paying Plaintiff twice for the same performance, as the FSHI Agreement did not obligate Plaintiff to perform any further acts.  Additionally, the FSHI Agreement makes no mention of any prior performance or any money owed.  The only plausible explanation of Plaintiff's

allegations is that the FSHI Agreement was the *only* agreement between the parties, and that it memorialized the entire understanding between the parties regarding the compensation that Plaintiff would receive for its contribution to the potential deal, including arranging the initial phone call.   This conclusion is bolstered by the fact that the only phone call Plaintiff allegedly arranged occurred *after* the FSHI Agreement was signed.  (*Id*. ¶¶ 53-54 (discussing a June 3, 2009 phone call from Prince Bin Talal).)   Accordingly, since the most likely explanation of Plaintiff's allegations "involve lawful, non-actionable behavior," the Court should find that Plaintiff's claim is not plausible.  *Twombly*, 550 U.S. at 570 (a claim should be dismissed where the well-pled allegations fail to nudge the claim "across the line from conceivable to plausible").

> **B.**     **Plaintiff Fails to State a Claim Against IPIC With Respect to the Refinery, Lease, and Caterpillar Stock Transactions (Counts I-VI and X-XII)**

> **1.**     **The Lease and Refinery Transactions**

Plaintiff's revised causes of action related to the Lease and Refinery Transactions similarly lack all plausibility.  Plaintiff no longer alleges that it was to be paid a commission upon the closing of these transactions; instead, it alleges that it was to be paid a commission simply upon identifying potential acquisition targets, regardless of whether IPIC pursued any negotiations with these targets.  Even if plausible, however, the allegations fail to state any claim, as they are completely negated by both the terms of the mandates appointing Plaintiff as IPIC's representative with respect to these transactions and by Plaintiff's inconsistent allegations.  *CC-Aventura, Inc. v. Weitz Co., LLC,* No. 06-21598-CIV, 2007 WL 117935, at *4 (S.D. Fla. Jan. 10 2007) ("[I]f an allegation in the complaint is contradicted by a

document incorporated by reference therein and which reveals facts foreclosing recovery as a matter of law, dismissal is appropriate.").

With respect to the Lease transaction, Plaintiff now alleges, *inter alia*, that:  IPIC orally retained CTI to locate interests in leaseholds for oil and natural gas exploration and production within the United States.  (Am. Compl. ¶ 32.)  CTI located a 200-acre tract of land in the State of Utah, exploration leases for which were held by Jericho Energy Company ("Jericho").  (*Id.* ¶ 33.)  With respect to the Refinery Transaction, Plaintiff now alleges that CTI was retained to find an oil refinery that met Mr. Al Qubaisi's specifications and that it was to be paid 2.5% of the market value.  (*Id.* ¶¶ 26, 29.)  Plaintiff alleges that its right to compensation in both transactions was complete when Mr. Al Qubaisi approved the proposed acquisition targets by issuing mandates naming Plaintiff as its representative.  (*Id.* ¶¶ 29, 35.)

These mandates, together with Plaintiff's inconsistent allegations, reveal the opposite. The mandate with respect to the Lease Transaction states in relevant part:

> Mr. Fadi Kantar . . . has been appointed by IPIC as its representative to aid in the evaluation of a possible investment by IPIC in a 200 acre tract of land <u>located in the Gulf Coast region of the United States</u>.

(A true and correct copy of the mandate, dated December 25, 3008 [sic], from Mr. Al Qubaisi, is attached hereto as Ex. C. (emphasis added).)

Utah is not located on the Gulf Coast of the United States.  Accordingly, Plaintiff cannot establish the essential elements of a breach of contract claim—namely, that it performed under the alleged contract by finding an acquisition target that met IPIC's requirements, or that Mr. Al Qubaisi agreed that leases in Utah were an appropriate

acquisition target, a condition precedent to Plaintiff's commission.[13]   In fact, as Plaintiff acknowledges, the opposite is true:   Plaintiff alleges that Mr. Al Qubaisi, after signing the mandate, "never followed up on the acquisition of the Leases [and] . . . . never responded" to letters from Jericho.  (*Id*. ¶ 36.)

Plaintiff's allegations with respect to the Refinery transaction are deficient for the same reasons.  The mandate appointing Plaintiff as IPIC's representative with respect to this transaction similarly fails to support Plaintiff's claim that Mr. Al Qubaisi approved the St. James Refinery as a target.  The mandate is addressed "to whom it may concern;" it is not addressed to Inca Refinery, Inc. ("Inca"), the owner of the St. James Refinery, as would be the case if Mr. Al Qubaisi had approved that Refinery.  (A true and correct copy of the mandate, dated December 25, 3008 [sic], from Mr. Al Qubaisi, is attached hereto as Ex. D.)  Moreover, it appoints CTI to "aid in the evaluation of a *possible* investment," and to determine the "prospectivity of an investment," clearly indicating that IPIC had not reached a decision regarding whether the St. James Refinery was a "suitable target."  (Am. Compl. ¶ 19; Ex. D. (emphasis added).)  Here again, Plaintiff's additional allegations demonstrate that Mr. Al Qubaisi did not in fact approve the St. James Refinery.  (Am. Compl. ¶ 30 (Mr. Al Qubaisi, after signing the mandates, "never followed up on the acquisition of the Refinery" and never made any contact with Inca).)

---

[13] Undeterred by the plain language of the mandate, Plaintiff claims that IPIC made a clerical error when it specified that it had engaged CTI to find leases located in the Gulf Coast and in fact intended to state that CTI was engaged to find a seller located in the Gulf Coast.  (Am. Compl. ¶ 35 n. 1.)  This unsupported and blatantly self-serving claim is clearly not plausible and should be rejected out of hand.  It makes little sense that IPIC would neglect to specify in the mandate a material and essential term such as where the land subject to the leases should be located but would instead choose to specify a completely incidental term, such as where the seller should be located.

These inconsistent and conclusory allegations are contradicted by the written documents relied on by Plaintiff, and do not plausibly suggest that Plaintiff performed under the alleged agreements or that the alleged condition precedent to its right to payment, Mr. Al Qubaisi's approval of the targets, had been met.   Accordingly, Plaintiff's allegations are insufficient to state a cause of action for breach of the purported agreements and should be dismissed.  *See United States v. Ruff*, 179 B.R. 967, 970 (M.D. Fla. 1995) ("Under Florida law . . . 'the broker and the party paying the commission may establish conditions which must be met before the broker earns the commission.'") (citation omitted).

### 2.       The Caterpillar Stock Transaction

Plaintiff's new allegations with respect to the Caterpillar transaction are equally insufficient to state a claim.  Plaintiff now asserts that it was to be paid 0.5% of the market value of the shares of Caterpillar "upon ascertaining that CAT had an interest in the sale of the required amount of stock" specified by Mr. Al Qubaisi.  (Am. Compl. ¶ 62.)  Plaintiff further alleges that the Chief Executive Officer of Caterpillar invited CTI and IPIC to visit its headquarters in Illinois as a first step, but that IPIC failed to follow through and informed CTI that the acquisition was "on the back burner."  (*Id*. ¶ 63.)

As an initial matter, Plaintiff's bare-boned and conclusory allegations are insufficiently definite to allege the existence of the purported oral agreement.  Plaintiff alleges that the agreement called for it to "ascertain that CAT had an interest in the sale" and "[open] the door to complete the transaction."  (Am. Compl. ¶¶ 61-62.)  Plaintiff, however, fails to state any of specific criteria that it was required to negotiate with Caterpillar.  In fact, Plaintiff fails to identify any concrete obligations at all that that it was required to fulfill.  *See*

*Uphoff v. Wachovia Sec., LLC*, No. 09-CV-80420, 2009 WL 5031345, at *3 (S.D. Fla. Dec. 15, 2009) (to state a cause of action for breach of an oral contract, a plaintiff must allege that the "parties mutually assented to 'a certain and definite proposition' and left no essential terms open") (citations omitted); *Mid-State Federal Sav. Bank v. Marketing and Mgmt. Assoc., Inc.*, 570 S. 2d 1016, 1017-18 (5th DCA 1990) (finding no meeting of the minds where essential matters of an agreement were left for further consideration).

Second, Plaintiff's conclusory assertions that it adequately performed under the contract and its "task was complete" should be disregarded.  (Am. Compl. ¶ 62.)  Plaintiff's own allegations support the conclusion that the Caterpillar stock sale "arranged" by Plaintiff was not satisfactory to IPIC.  (Am. Compl. ¶ 63 (IPIC "failed to follow through" and put the transaction "on the back burner").)   Because Plaintiff's allegations do not support the reasonable inference that IPIC entered into a valid agreement or that Plaintiff performed under that agreement, this claim should be dismissed.  *APR Energy LLC v. Pakistan Power Resources*, 653 F. Supp. 2d 1227, 1232 (M.D. Fla. 2009) (in order to state a claim for breach of contract under Florida law, a plaintiff must allege "performance of its obligations under the contract or a legal excuse for its non performance") (citation omitted).

C. **Plaintiff Fails to State a Claim Against Tasameem in Connection with the Whiteaway Bank, VTB Bank, and Gulf Transactions (Counts XIII-XXII)**

Plaintiff's allegations with respect to the VTB, Gulf, and Whiteaway Bank Transactions are also deficient.  As with its other claims, Plaintiff fails to adequately allege the terms of the purported oral agreements, makes inconsistent allegations concerning those terms, and fails to plausibly allege that it performed its obligations under the agreements.

1.      **The VTB Bank and Gulf Transactions**

Plaintiff alleges, *inter alia,* that "at the request of Mr. Al Qubaisi, on March 1, 2009, CTI initiated an effort to locate favorable investment opportunities."  (Am. Comp. ¶ 71.)  It further alleges that as a result of its efforts Tasameem entered into a "Contract of Investment" pursuant to which a VTB bank guarantee was sold to Tasameem.  (*Id*. ¶ 74.)  CTI claims that, "under the terms of the agreement between CTI and Mr. Al Qubaisi, and upon Mr. Al Qubaisi's approval of the financial transaction, CTI was entitled to commission of 1% of the transaction," but that Tasameem failed to pay it.  (*Id*. ¶ 75.)  With respect to the Gulf transaction, Plaintiff alleges that pursuant to the same March 1, 2009 agreement, it introduced Tasameem to Gulf, who was willing to provide it a $4 billion dollar revolving line of credit.  (*Id*. ¶¶ 79-81.)   Plaintiff alleges that, upon Mr. Al Qubaisi's approval of the transaction, CTI was to be paid a commission of 0.5% of the transaction amount.  (*Id*. ¶ 82.)  Plaintiff further alleges that Tasameem told Plaintiff that it was not interested in a loan from Gulf and would not be paying its commission.  (*Id*. ¶ 83.)

Plaintiff's indefinite allegation that "at the request of Mr. Al Qubaisi, it entered into an effort to locate favorable investment opportunities" completely fails to allege the elements necessary to establish the existence of an oral agreement with Tasameem.  *See Jacksonville Port Authority*, 624 So. 2d 313, 315 (1st DCA 1993) ("[i]f there has been no agreement as to essential terms, an enforceable contract does not exist.");  *McKinney-Green, Inc.*, 606 So. 2d 393, 395 (1st DCA 1992) (dismissing breach of contract claim where plaintiff failed to provide precise allegations of the terms of the contract).  First, Plaintiff does not claim that Mr. Al Qubaisi intended to bind Tasameem or any other Defendant to the alleged agreement.

*See Lane v. Capital Acquisition & Mgmt. Co.*, No. 04-60602-CIV, 2006 WL 4590705, at *5 (S.D. Fla. Apr. 14, 2006) (dismissing a complaint for failing to meet minimum pleading standards where plaintiff "lump[ed] all the defendants together in each claim and provid[ed] no factual basis to distinguish their conduct").   Second, Plaintiff's allegation that it was engaged to locate generalized "favorable investments" is too vague to constitute a "meeting of the minds" sufficient to support an oral contract.  *Jacksonville Port Authority*, 624 So. 2d at 315 (requiring "a certain and definite proposition" and no essential terms left open). Additionally, Plaintiff completely fails to explain how the same supposed agreement to locate "favorable investment opportunities" entitled it to different commissions for the alleged Gulf and VTB transactions.  (*Compare* Am. Compl. ¶ 75 (alleging entitlement to 1% of the transaction amount for the Gulf Transaction) *to* ¶ 82 (alleging entitlement to 0.5% of the VTB transaction amount).)   These vague, conclusory, and internally inconsistent allegations fail to allege any oral agreement upon which Plaintiff can maintain an action.[14]

### 2.      The Whiteaway Bank Transaction

Plaintiff's revised allegations with respect to the Whiteaway Bank Transaction do not state a claim upon which relief can be granted for several reasons.  Plaintiff's assertions that it entered into an agreement to locate any "mid-range" British bank available for acquisition, and for this service would earn 1% of whatever the market value of that bank happened to be, fails to adequately allege an agreement as to the specific terms of Tasameem's investment criteria and is insufficient to support the existence of an oral agreement.  (*Id.* ¶¶ 65, 67.)

---

[14] Plaintiff's failure to allege an enforceable contract is fatal to its claim of breach of the covenant of good faith and fair dealing.  *Burger King v. Weaver*, 169 F.3d 1319, 1318 (11th Cir. 1999) (a cause of action for breach of the implied covenant cannot be maintained absent a breach of an express term of the underlying contract).

Similarly, Plaintiff has failed to plausibly allege that it performed under the agreement or that its "task was complete" when Mr. Al Qubaisi issued a letter to Whiteaway Bank appointing CTI as Tasameem's representative.  (*Id*. ¶ 67.)  That letter does not, as Plaintiff claims, demonstrate that Mr. Al Qubaisi "signified approval of Whiteaway as a target for acquisition."  (*Id*.)  Instead, the letter "names Mr. Kantar…as Tasameem's agent for acquisition of Whiteaway" in order to "take discussions to the next level" (A true and correct copy of the letter, dated April 24, 2009, from Mr. al Qubaisi, is attached hereto as Ex. E.)  Moreover, Plaintiff's own allegations establish that Whiteaway Bank did not meet Tasameem's approval.  (Am. Compl. ¶¶ 68-69 ("Tasameem failed to engage in any further activities with respect to the acquisition.").)  Once again, because Plaintiff's allegations do not support the "reasonable inference" that Tasameem entered into the agreement as alleged, or that Plaintiff adequately performed under any other agreement, Plaintiff fails to state a claim against Tasameem upon which relief can be granted.  Accordingly, Plaintiff's claims against Tasameem, along with its claims against Aabar and IPIC, should be dismissed.[15]

---

[15] Plaintiff has failed to sufficiently state a claim for either quantum meruit or unjust enrichment with respect to any of the alleged transactions because it cannot demonstrate that it conferred a benefit on any of the Defendants to which any of the Defendants assented.  *Tilton v. Playboy Ent. Group, Inc*, No. 8:05-CV-692, 2007 WL 80858, at *3 (M.D. Fla. Jan. 8, 2007) (in order to state a claim for unjust enrichment, a plaintiff must allege that:  "(1) the plaintiff conferred a benefit on the defendant who had knowledge of the benefit; (2) the defendant voluntarily accepted and retained the benefit; and (3) under the circumstances it would be inequitable for the defendant to retain the benefit without paying for it").  As detailed above, Plaintiff's allegations fail to support its claims that Mr. Al Qubaisi ever approved or pursued any of these proposed transaction, and make no showing that Defendants ever benefitted in any way from Plaintiff's alleged work.  *Coffee Pot Plaza P'ship v. Arrow Air Conditioning & Refrigeration, Inc*., 412 So. 2d 883, 884 (Fla. 2d DCA 1982) (defendant was not unjustly enriched by repairs and installation of refrigeration equipment that it did not request); *Hermanowski on Behalf of Americable Assocs. v. Naranja Lakes Condo. No. Five, Inc*., 421 So. 2d 558, 560 (Fla. 3d DCA 1982) (denying plaintiff recovery on quantum meruit where it "officiously conferred" improvements without a meeting of the minds regarding rates or services and where the improvements were not authorized or ratified).

## V.       FORUM NON CONVENIENS WARRANTS DISMISSAL OF THIS ACTION

Under the doctrine of forum non conveniens, it is within the discretion of the Court to dismiss a cause of action where "the interests of justice require that the trial be had in a more appropriate forum." *Sibaja v. Dow Chemical Co.*, 757 F.2d 1215, 1219 (11th Cir. 1985) (citation omitted). A party moving to dismiss on the grounds of forum non conveniens must demonstrate that "(1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1310-11 (11th Cir. 2001). Convenience is the "touchstone" of this analysis. *Banco Latino v. Gomez Lopez*, 17 F. Supp. 2d 1327, 1331 (S.D. Fla. 1998). In the instant case, all relevant factors militate in favor of dismissal, especially given the fact that Plaintiff maintains an office and regularly transacts business in the UAE, and would not be unduly inconvenienced by litigation in that forum.

### A.       The UAE Provides an Adequate Alternative Forum

The UAE is both available and adequate as a forum to resolve this dispute. Ordinarily, the availability requirement "will be satisfied when the defendant is 'amenable to process' in the other jurisdiction." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n. 22 (1981). Defendants are all companies organized under the laws of the UAE, and as such they are subject to the jurisdiction of its courts. (Ghosheh Decl. ¶ 13.)

An "adequate" alternative forum is one that offers at least some relief with a reasonable level of impartiality and efficiency. *Leon*, 251 F.3d at 1311-13; *Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1282-83 (11th Cir. 2001). Only "in rare

circumstances . . . where the remedy offered by the forum is clearly unsatisfactory" will the alternate forum be inadequate. *Piper*, 454 U.S. at 254 n. 22. Mere disparities in law between the chosen forum and the alternative forum, such as the unavailability of a beneficial litigation procedure or the prospect of lesser monetary recovery, do not render an alternative forum inadequate. *Satz*, 244 F.3d at 1282 (citation omitted); *Banco Latino*, 17 F. Supp. 2d at 1332. The adequacy of UAE courts under this standard cannot be seriously disputed. As discussed in the Ghosheh Declaration, UAE courts afford litigants substantially the same rights to present their arguments and supporting evidence, to request discovery from the other side, and to take an appeal. (Ghosheh Decl. ¶¶ 5-11.) The subject matter of this suit— breaches of alleged oral contracts—is cognizable under the law of the UAE, and the UAE legal system is capable of providing fair consideration and comparable remedies for Plaintiff's standard breach of contract claims. (*Id.* ¶¶ 14-15.)

### B. Private Interests Overwhelmingly Favor Dismissal to the UAE

Private interests, including "(1) relative ease of access to sources of proof; (2) availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; and (3) all other practical problems that make trial of a case easy, expeditious and inexpensive" weigh in favor of dismissal in the present case. *Banco Latino*, 17 F. Supp. 2d at 1332 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).

Here, both the majority of the sources of proof and of the potential witnesses are located in the UAE or Saudi Arabia. Plaintiff's claims center on several alleged oral agreements negotiated and entered into in the UAE with businesses operating in the UAE. These oral agreements can only be substantiated or challenged by the parties involved. All of

the Defendants' representatives with knowledge of this matter are citizens or residents of the UAE.  Moreover, the vast majority of the individuals that Plaintiff identifies as "likely to have discoverable information" are located in the UAE.   (Plaintiff's Rule 26 Initial Disclosures, served on June 2, 2010, attached hereto as Ex. F.)  Accordingly, this Court lacks the ability to compel testimony from crucial witnesses.  Parties seeking to compel unwilling witnesses will be required to resort to letters rogatory, a time-consuming, expensive, and cumbersome process.  *Morse v. Sun Intern Hotels, Inc.*, 2001 No. 98-7451 CIV, WL 34874967, at *3 (S.D. Fla. Feb. 26, 2001) ("[D]eposition and letters rogatory, even if available to the American court, would be less than satisfactory substitutes for in-person testimony.") (quoting *Iragorri v. Int'l Elevator Inc.*, 203 F.3d 8, 17 (1st Cir. 2000)).  Additionally, to the extent that Defendants have any documentation of their contact with Plaintiff, those documents are also in the UAE.

Finally, a court may consider "all other practical problems that make trial of a case easy, expeditious, and inexpensive."  *Banco Latino*, 17 F. Supp. 2d at 1332 (citation omitted).  Here, because all the sources of proof and witnesses are located in the UAE, the Court should consider costs of potential translation and interpreters for these foreign sources of evidence.  Additionally, Plaintiff maintains an office in the UAE, transacts business—including its alleged business with Defendants—from within that jurisdiction, and speaks the language, and thus would not itself be unduly inconvenienced by litigation in that forum.  (Ex. A. (noting that Plaintiff's representatives maintain an office in the UAE and speak Arabic).)   Plaintiff's limited private interest in litigating this case in Florida is clearly outweighed by the cost advantages and convenience of bringing suit in the jurisdiction in

which the events giving rise to this suit occurred, a majority of the relevant evidence is located, and all parties are present.

### C.  Public Interest Factors Overwhelmingly Favor Dismissal to the United Arab Emirates

Relevant public interest factors, including considerations of international comity, also favor dismissal to the UAE.  These factors include "the sovereign's interest in deciding the dispute, the administrative burdens posed by trial, and the need to apply foreign law."  *Satz*, 244 F.3d at 1284 (citation omitted).

Here, the UAE has a decidedly stronger interest in adjudicating this case.  The alleged agreements were negotiated and formed in Abu Dhabi with a Plaintiff who conducts business in the UAE with Abu Dhabi companies.  The center of gravity of this controversy is Abu Dhabi.  Additionally, because this case involves a foreign sovereign, "the issues to be resolved are entangled in international relations."  *In re Maxwell Commc'n Corp.*, 93 F.3d 1036, 1047 (2d Cir. 1996).  Accordingly, principles of international comity favor dismissal. *Republic of Phil. v. Pimentel*, 128 S. Ct. 2180, 2190 (2008) ("A foreign state has a comity interest in using its courts for a dispute if it has a right to do so.").  The UAE has a strong national interest in handling matters against its state enterprises, and in applying its laws to business conducted with those enterprises in the UAE.

The application of foreign law to this matter also strongly favors dismissal.  It is well established that, under Florida choice-of-law rules, "the nature, validity and interpretation of contracts" are to be governed by the law of the state where the contract is made or performed. *Wingold v. Horowitz*, 292 So. 2d 585, 586 n. 3 (Fla. 1974) (citation omitted).  If the Court were to retain this action, it would be required to interpret and apply the law of the UAE.  In

this case, a trial in Abu Dhabi is far more practical and efficient than a trial in Florida, given the challenges of applying the law of the UAE and the need for extensive translation and expert testimony on that law. *Eastman Kodak Co v. Klavin*, 978 F. Supp. 1078, 1084 (S.D. Fla. 1997) (citing the application of foreign law as a factor favoring dismissal on forum non conveniens grounds); *Morse,* 2001 WL 34874967, at *7 (same).

Finally, Florida courts have little interest in this matter beyond protecting a company that, although organized locally, conducted its operations abroad. Although this case is highly unlikely to proceed beyond a preliminary stage, if it did, it would have no impact on this State other than to tax this Court's limited judicial resources and to force Florida tax payers and jurors to finance and attend a trial considering a dispute that has little connection with the forum. Accordingly, this public interest factor favors dismissal.[16]

Whether taken together or viewed separately, all the relevant factors weigh decidedly in favor of dismissal to the UAE. This Court should spare Defendants the burden and excessive cost of defending a baseless suit in the United States.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint in its entirety.

Dated: July 9, 2010

---

[16] Additionally, Plaintiffs can reinstate their case in the United Arab Emirates without undue inconvenience or prejudice. This Court may dismiss the action on the condition that, if Plaintiff is unable to reinstate its case in a reasonable time, through no fault of Plaintiff, and such decision is affirmed by the highest court in the United Arab Emirates, then this action can be reactivated. *Leon*, 251 F.3d at 1316. Thus, Plaintiff will not be prejudiced by dismissal of this action to the United Arab Emirates. Likewise, Plaintiff maintains an office in the United Arab Emirates and thus would not be unduly inconvenienced by litigation in that forum. (Ex. A.)

By: /s/ Christi R. Adams
   John R. Hamilton
   Florida Bar No. 0774103
   jhamilton@foley.com
   Christi R. Adams
   Florida Bar No. 0498351
   cadams@foley.com
   111 N. Orange Ave., Ste. 1800
   Orlando, FL  32801
   Telephone: (407) 423-7656
   Facsimile:  (407) 648-1743
   *Attorneys for Defendants*

*Of Counsel:*

Henry Weisburg
Karen Hart
Jennifer Rimm

**Shearman & Sterling LLP**
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 848-4000
Facsimile: (212) 646-4000

### CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished via filing with the court's CM/ECF system this 9th day of July 2010 to counsel of record, John Dotterrer and Vince Green, John C. Dotterrer Counsellors at Law, P.A., 125 Worth Avenue, Ste. 310, Palm Beach, FL 33480.

          /s/ Christi R. Adams
          Christi R. Adams
          Florida Bar No. 0498351