UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

---------------------------------------------------------------x
CAPITAL TRANS INTERNATIONAL, LLC, :
a Florida limited liability company, :
 :
                Plaintiff, :
 :
                -against- :
 : Case No. 8:10-CV-529-30TGW
INTERNATIONAL PETROLEUM :
INVESTMENT COMPANY, a foreign company, :
AABAR INVESTMENTS PJSC, a foreign :
company, and TASAMEEM REAL ESTATE CO, :
LLC, a foreign limited liability company, :
 :
                Defendants. :
---------------------------------------------------------------x

**AABAR INVESTMENTS PJSC AND INTERNATIONAL PETROLEUM
INVESTMENT COMPANY'S MOTION FOR A
<u>PROTECTIVE ORDER AND SANCTIONS</u>**

Defendants International Petroleum Investment Company ("IPIC") and Aabar Investments PJS (formerly known as Aabar Investments PJSC, "Aabar") (collectively with Tasameem Real Estate Co., LLC, "Defendants") by and through their undersigned attorneys and pursuant to Rules 26(c) and (g) of the Federal Rules of Civil Procedure, hereby move for the entry of a Protective Order in this case, and the imposition of appropriate sanctions against Plaintiff. In support thereof Aabar and IPIC state as follows:

**PRELIMINARY STATEMENT**

On May 26, 2011, Plaintiff served Defendants Aabar and IPIC with Plaintiff's Second Requests for Production of Documents (the "Second Requests," attached hereto as Exhibits ("Exs.") A and B (as amended by Plaintiff on June 16, 2011)). The Second Requests seek the exact same information that Plaintiff previously moved to compel—and which this Court

denied—and serve no purpose other than to harass Aabar and IPIC and needlessly prolong this litigation.

In the fifteen months since this litigation began, Plaintiff has served over 200 discovery requests on Defendants and filed nine motions to compel responses, the majority of which were denied by this Court as being outside the scope of this Court's orders limiting discovery to issues relevant to jurisdiction. Defendants have now produced hundreds of pages of jurisdictional discovery. Aabar and IPIC have also produced two of their most senior executives for deposition in Florida, who testified fully about Aabar's status as a private, non-governmental entity and both Defendants' lack of contacts with the United States in connection with this action.

Because Plaintiff has already received complete discovery on every issue of possible relevance to jurisdiction, on May 26, 2011, Aabar and IPIC moved for an order requesting the close of jurisdictional discovery and a scheduling order for supplemental briefing on jurisdiction and on forum non conveniens. (Dkt. No. 95.) On that same day, Plaintiff served these baseless requests for discovery it either already has or to which is it not entitled—a purely dilatory tactic to extend this already protracted litigation. By letter dated June 13, 2011, Aabar and IPIC informed Plaintiff that its Second Requests were improper and unnecessary and requested that Plaintiff withdraw them. Plaintiff responded with meaningless alterations. (*See* Exs. A, B; *see also* Letter from John Dotterrer to Henry Weisburg, dated June 16, 2011, attached hereto as Ex. C.) Plaintiff's stated reason for needing the discovery (as well as its arguments in opposition to Aabar and IPIC's motion to

end discovery[1]) have no merit and demonstrate instead Plaintiff's use of discovery to conduct improper fishing expeditions and harass Defendants.

Plaintiff's continuous disregard of this Court's orders limiting discovery to jurisdictional issues is highlighted by these requests, which primarily seek information that this Court has already ruled to be outside the scope of jurisdictional discovery. Plaintiff's transparent attempt to harass Defendants, burden them with unnecessary costs, and delay this litigation requires the imposition of a protective order and appropriate sanctions.

## BACKGROUND

Over fifteen months ago, Plaintiff filed a 32-count Complaint against Defendants. (Dkt. No. 1, filed February 26, 2010.) On May 10, 2010, Defendants filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2), (5), and (6). (Dkt. No. 12.) Plaintiff filed an Amended Complaint on June 9, 2010. (Dkt. No. 19.) After filing its Amended Complaint, Plaintiff served extensive requests for production of documents and interrogatory answers on Defendants, as well as non-parties Extell Development Company, Extell West 57th Street, and Gary Barnett, Extell's President.[2]

On July 9, 2010, Defendants moved to dismiss Plaintiff's Amended Complaint arguing, among other things, that this Court lacks jurisdiction over the Defendants and on the

---

[1] *See* Plaintiff's Opposition to Aabar and IPIC's Motion to Declare Jurisdictional Discovery Concluded and Set Supplemental Briefing Schedule, filed June 16, 2011 (Dkt. No. 100).

[2] Plaintiff served its First Requests for Production on Defendants on June 24, 2010 and its First Set of Interrogatories on Defendants on July 1, 2010. (*See* Plaintiff's Motion to Compel Responses to Discovery Served on Defendants, filed July 29, 2010, Exs. 1, 2 (Dkt. No. 34).) On August 9, 2010, Plaintiff served an additional set of discovery requests on Defendants, seeking 27 new categories of documents and posing 13 new interrogatories. (*See* Defendants' Opposition to Plaintiff's Motion to Compel Responses to Discovery Served on Defendants, filed August 12, 2010, Exs. A, B (Dkt. No. 40).)

3

basis of forum non conveniens. (Dkt. No. 29.)

On July 29, 2010, Plaintiff moved to compel responses to discovery served on Defendants (Dkt. No. 34), which Defendants opposed on August 12, 2010 (Dkt. No. 40). Six days after moving to compel, Plaintiff filed its opposition to Defendants' third motion to stay discovery. (Dkt. No. 35, filed August 4, 2010.) On August 11, 2010, Plaintiff filed its Opposition to Defendants' Motion to Dismiss. (Dkt. No. 39.)

Pursuant to a hearing held on September 17, 2010 regarding the parties' discovery motions, Magistrate Judge Wilson ordered that discovery be limited to the jurisdictional issues in this case. (Dkt. No. 47.) On November 30, 2010, Judge Moody also ordered discovery limited to the issues of whether Defendants IPIC and Aabar were subject to jurisdiction pursuant to the Foreign Sovereign Immunities Act ("FSIA") and whether Defendant Tasameem was subject to jurisdiction pursuant to the Florida Long-Arm Statute. (Dkt. No. 48, collectively with Dkt. No. 47, the "Orders.")[3] Despite the Court's explicit limitation on discovery, Plaintiff served extensive document requests and interrogatories on all three Defendants that far exceeded the scope of the Orders.[4] Defendants timely served their responses, including objections, to Plaintiff's excessive discovery.

Plaintiff claimed that Defendants' responses were not sufficient, and filed three Motions to Compel Production of Documents and three Motions to Compel Complete

---

[3] The parties were also directed to submit a proposed discovery plan with the Court within 30 days. *Id.* The parties filed the Joint Discovery Plan, but were unable to come to an agreement on the scope of the discovery. A Case Management Conference was held with the Court on February 10, 2011.

[4] In total, Plaintiff served Aabar with 19 interrogatories and 55 document requests, IPIC with 12 interrogatories and 49 document requests, and Tasameem with 16 interrogatories and 51 document requests pursuant to these Orders.

Interrogatory Answers from Defendants. (Dkt. Nos. 51-52, 54, 56, 66-67.) Defendants filed consolidated responses in opposition to these motions on February 24, 2011. (Dkt. Nos. 75-77.)

A hearing was held on Plaintiff's Motions to Compel on March 11, 2011. During the hearing, Plaintiff's counsel withdrew Plaintiff's Motion to Compel Production of Documents from Tasameem.[5] The Court ordered that Aabar and IPIC provide responses to a limited number of Plaintiff's requests. (Dkt. No. 84, the "March 11 Order") Aabar and IPIC timely served their responses on March 31, 2011. Aabar and IPIC each produced one of their most senior officers for deposition in Florida, on May 18 and 19, 2011.

Following these depositions, on May 26, 2011, Defendants Aabar and IPIC filed a Motion to Declare Jurisdictional Discovery Concluded and Set Supplemental Briefing Schedule. (Dkt. No. 95.) That same day, Plaintiff served Aabar and IPIC with the Second Requests.

After conferring with Defendants regarding their objections to the Second Requests, Plaintiff refused to withdraw its Second Requests but offered minor revisions by letter dated June 16, 2011. (*See* Exs. A-C.) On June 16, 2011, Plaintiff also filed its Opposition to Aabar and IPIC's Motion to Declare Jurisdictional Discovery Concluded and Set Supplemental Briefing Schedule. (Dkt. No. 100.)

---

[5] On April 18, 2011, Plaintiff filed Renewed Motions and Incorporated Memoranda of Law to Compel Complete Interrogatory Answers and Production of Documents from Tasameem. (Dkt. Nos. 87-88.) A hearing on Plaintiff's Motions to Compel as to Tasameem was held before Judge Wilson on May 20, 2011. Pursuant to that hearing, Defendant Tasameem was required to produce certain additional responses. (Dkt. No. 93.) Tasameem produced these responses on June 13, 2011.

5

**MEMORANDUM OF LAW**

I.  **THE COURT SHOULD ENTER AN ORDER PROTECTING AABAR AND IPIC FROM FURTHER DISCOVERY REQUESTS**

Pursuant to Fed. R. Civ. P. 26(c), the Court may issue a protective order upon a showing of "good cause" to limit the scope of discovery. *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 355, 357 (11th Cir. 1987). A party from whom discovery is sought may move for a protective order if it shows good cause "to protect [that] party or person from annoyance, embarrassment, oppression, or undue burden or expense…" Fed. R. Civ. P. 26(c)(1). When issuing a protective order the Court must evaluate and balance the interests of the parties and the non-parties concerning dissemination of discovery material. *In re Alexander Grant,* 820 F.2d at 357.

Plaintiff's most recent discovery served on Aabar and IPIC is exactly the type of improper, harassing, and unduly burdensome discovery that Fed. R. Civ. P. 26(c) is intended to stop. At a hearing on Plaintiff's Motions to Compel, held March 11, 2011, Judge Wilson specifically denied discovery on the *exact same information* that Plaintiff now seeks with these new requests, and limited the scope of others.

A.  **Plaintiff's Second Requests to Aabar**

Requests 1-7 to Aabar ask for documents pertaining to Aabar's alleged investments in, and applications to U.S. governmental bodies for approval of investments in, Virgin Galactic, LLC; XOJET, Inc.; a New York City skyscraper; and Mercedes (a/k/a Daimler

AG). (Ex. A at 5-6.)[6] Judge Wilson's March 11 Order denied Plaintiff's Request to Compel Document Responses 20-25, which sought information about the exact same transactions and similar applications on the grounds that such information is irrelevant under Plaintiff's jurisdictional theory. *See* Dkt. No. 84; *see also Saudi Arabia v. Nelson*, 507 U.S. 349, 357 (1993). In light of that Order (and the controlling Supreme Court precedent upon which it is based), Plaintiff cannot seriously argue that it has reasonable grounds for seeking this information. To the contrary, these requests are facially improper and can have no proper purpose.

In an effort to justify renewal of requests that this Court has already denied, Plaintiff now claims that it is seeking documents showing that Aabar's investments—specifically Aabar's U.S. projects that "bring technology back to Abu Dhabi"—accomplish a governmental purpose. (Ex. C at 1.) However, during the deposition of Mr. Mohamed Ahmed Badawy Al-Husseiny, Aabar's CEO, Plaintiff specifically asked about this alleged purpose and was told this was not one of Aabar's functions:

> Q. Is one of the purposes of Aabar to bring technology to Abu Dhabi?
> A. Aabar is a commercial investment company.
> Q. Is it used to bring technology to Abu Dhabi?
> A. I'm not sure I understand the question. Is it used by who?
> Q. By anyone such as its parent?
> A. Not to my knowledge.

(Mohamed Ahmed Badawy Al-Husseiny ("Aabar Corp. Rep.") Dep. at 184:5-184:12 (attached hereto as Ex. D).)

---

[6] Plaintiff subsequently "narrowed" its Second Requests to board presentations or minutes showing Aabar's "reason or purpose" for its U.S. investments. (*See* Exs. A, C.)

7

Putting aside the question of whether "bringing technology back to Abu Dhabi" is even a governmental activity, there is no reason to believe that presentations to Aabar's board or board minutes would reflect this purpose.[7] Here again, Plaintiff attempts to justify discovery because it does not like the answers it already received.

Moreover, Mr. Al-Husseiny testified that Aabar's investment decisions are not controlled by IPIC or the government of Abu Dhabi and that Aabar operates independently from the government. This testimony is corroborated by all the discovery that Plaintiff received prior to Mr. Al-Husseiny's deposition.[8] Accordingly, there is absolutely no basis for believing that additional documents will show that Aabar performs any exclusive public function on behalf of the government. Even if Plaintiff could show that Aabar sought to benefit the Abu Dhabi economy, corporate objectives that provide an incidental and general national benefit are not the kind of "public purpose" contemplated by the FSIA.

*Scheidemann v. Qatar Football Ass'n*, 04 CIV. 3432 (LAP), 2008 WL 144846 (S.D.N.Y.

---

[7] Plaintiff's Opposition to Aabar and IPIC's Motion to End Jurisdictional Discovery also references Mr. Al-Husseiny's testimony that Aabar looks for investments that "benefit" Abu Dhabi to advance a similar argument for the necessity of these documents. (Dkt. No. 100 at 3-4 (citing Aabar Corp. Rep. Dep. at 185, 189-10, 191, 195, 197).) But Plaintiff relies on these statements without disclosing their context. Mr. Al-Husseiny's remarks were made during an interview about a UAE World Sports Awards Ceremony that was replayed at his deposition. It is hardly surprising that Mr. Al-Husseiny would promote Aabar's contributions to the UAE economy to an audience of UAE viewers.

[8] *See* Aabar Corp. Rep. Dep. at 81:4 ("IPIC does not designate what investments Aabar makes."), 105:10-11 ("IPIC is a shareholder in Aabar. IPIC has no involvement in Aabar board matters.") (attached hereto as Ex. E); s*ee also* Declaration of Mohamed Badawy Al-Husseiny ("Al-Husseiny Decl."), filed July 9, 2010, Dkt. No. 29-2, ¶¶ 4-6 (stating that Aabar does not perform a public activity, the government does not supervise Aabar's affairs, and Aabar is overseen by a Board of Director's appointed by shareholder vote); Aabar's Objections and Responses to Plaintiff's Amended Set of Interrogatories, Response to Interrogatory Number 11, at 7 (attached hereto as Ex. F) ("At the time relevant to the jurisdictional allegations in the Amended Complaint, Aabar did not receive financial support from the Government of Abu Dhabi, nor was it supervised by it."); Aabar's Further Objections and Responses to Plaintiff's Amended Set of Interrogatories, Response to Interrogatory Number 5, at 6-7 (attached hereto as Ex. G) (stating that Aabar is governed by a Board of Director's appointed by shareholder vote).

2008) (finding that an entity "formed for the purposes of promoting football in Qatar and for arranging matches for the Qatari national football team around the world" did not serve a public function that "entitled [it] to sovereign immunity under the 'restrictive theory' codified in the FSIA"); *Supra Med. Corp. v. McGonigle*, 955 F. Supp. 374, 379 (E.D. Pa. 1997) (finding that an entity created by an act of Parliament to promote medical and dental education in the United Kingdom, which received approximately 70 percent of its funding from the British government, and must account to the government for spending these funds, was not an organ of the government).[9]

Plaintiff's remaining Second Requests to Aabar are equally unjustified. Requests 8-11 seek minutes and resolutions of Aabar's board or shareholders showing the appointments of various officers and directors of Aabar. (Ex. A at 6.) Plaintiff does not even attempt to explain why these are necessary in its letter. Plaintiff has had ample opportunity to discover this information through document requests, interrogatories, and the deposition of Aabar's CEO, and has in fact received all the discovery with respect to Aabar's management that was ordered by this Court. These new requests are not calculated to reveal any relevant information to which Plaintiff does not already have access.[10] In fact, some of these

---

[9] Plaintiff fails entirely to explain how Second Requests 5-7, for Aabar's applications to U.S. regulatory bodies, could possibly relate to any prong of the "organ" test. Like Second Requests 1-4, these requests are clearly inappropriate in light of this Court's order denying discovery with respect to unrelated U.S. transactions. (Dkt. No. 84.)

[10] Aabar has already identified its "current directors and officers" and it has already explained that Aabar's directors are appointed for a three year period by Aabar's shareholders at its Annual General Meeting. (Al-Husseiny Decl. ¶ 6; Ex. G, Response to Interrogatory Number 10, at 10-11.) Minutes from Aabar's April 8, 2009 Annual General Meeting can be found on Aabar's website. AGM Minutes, Aabar Investments, *available at* http://www.aabar.com/index.php?option=com_content&view=article&id= 132%3Aagm-minutes&catid=2%3Alatest-news&Itemid=8&lang=en.

resolutions are available on Aabar's website. Most fundamentally, they have no relevance to any jurisdictional issue in this case.

### B. Plaintiff's Second Requests to IPIC

Plaintiff's Second Requests to IPIC are equally unjustified and contrary to this Court's March 11 Order. Plaintiff now seeks "presentation packages" and board minutes from IPIC showing IPIC's proposal to its management and its decision to invest in Aabar and convert its mandatory bonds, and "presentation packages" reflecting IPIC's proposal to loan €302 million to Aabar and vote in favor of Aabar's delisting and conversion to a private joint stock company. (Ex. B at 5-7.) Plaintiff already moved to compel more complete responses to its original requests for all documents "concerning or relating to" IPIC's investments in and loans to Aabar. This Court granted those requests with the limitation that IPIC need only produce documents sufficient to show IPIC's investments in Aabar. (Dkt. No. 84.) IPIC and Aabar timely provided these documents. Plaintiff's present demands for additional documents evidencing the same investments and loans improperly ignore the limitations on discovery previously imposed by this Court.

Moreover, they are completely unnecessary. Both the Corporate Representatives of Aabar and of IPIC testified in detail during their depositions regarding IPIC's investments in Aabar and the process by which the Boards of the respective companies approved the transactions. Plaintiff had ample opportunity to explore IPIC's "purpose and reason" for investment in Aabar during these depositions and has absolutely no basis for believing that these additional documents will reveal any information contrary to the testimony of Aabar's and IPIC's representatives. (Mohamed Hamad Al Mehairi ("IPIC Corp. Rep.") Dep. at 133-

10

139 (attached hereto as Ex. H) (describing board approval procedure at IPIC and stating that board presentation "packages" concerning IPIC's investment in Aabar are "basically like any other investments - just the financials, proposals, and recommendation from IPIC").) Furthermore, IPIC's rationale for its decision to invest in Aabar has no bearing on the nature of Aabar's activities and whether these activities constitute a governmental function.

Plaintiff's requests for high level internal reports prepared for IPIC's Board of Directors are particularly inappropriate in light of the fact that IPIC is a foreign sovereign and, as such, it is presumptively entitled to immunity from discovery. *Butler v. Sukhoi Co.*, 579 F.3d 1307, 1314 (11th Cir. 2009) (finding that the district court abused its discretion in granting jurisdictional discovery against a foreign sovereign). When jurisdictional discovery is ordered against a foreign sovereign, the principles of comity underlying the FSIA dictate that such discovery must be "'ordered circumspectly and only to verify allegations of specific facts crucial to an immunity determination'" with respect to that sovereign. *Id.* (internal citation omitted). Accordingly, the 11th Circuit has instructed courts to "balance the need for 'discovery to substantiate exceptions to statutory foreign sovereign immunity' against the need to 'protect[ ] a sovereign's or sovereign agency's legitimate claim to immunity from discovery.'" *Id.* (internal citation omitted). In this case, Plaintiff cannot demonstrate any need for this cumulative and redundant information and certainly none crucial enough to justify further stripping IPIC of its presumptive immunity. The requested discovery is not only duplicative of previous discovery, it has absolutely no relevance to Plaintiff's argument that IPIC is subject to the "commercial activities" exception of the FSIA.

Plaintiff's gambit of burdening Defendants and prolonging this litigation with

unreasonable and frivolous discovery demands is not new.  Defendants have endured over eight months of jurisdictional discovery and have incurred substantial costs in responding to Plaintiff's requests and largely frivolous motions to compel.  Defendants have complied with the discovery ordered by this Court which fully addresses all the jurisdictional issues in this case.  No more discovery is required or justified.  There can be no doubt at this point that Plaintiff intends to cause unnecessary delay and needlessly increase the cost of this litigation.  Given the over-breadth, repetition, and irrelevance of the Plaintiff's newest requests, and the fact that Plaintiff has had more than sufficient time to conduct jurisdictional discovery, a protective order should be issued to protect Aabar and IPIC from the undue burden and expense of responding to any additional discovery demands.

## II.     SANCTIONS

This Court should sanction Plaintiff for its continuous disregard of this Court's Orders regarding discovery and its ill-disguised tactic of attempting to prolong this litigation and burden Defendants with as many costs as possible.

Fed. R. Civ. P. 26(g) permits a court on its own initiative or upon a motion to sanction an attorney for signing a discovery request which is unreasonable or unduly burdensome or expensive.  *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536 (11th Cir. 1993).  The Rule requires an attorney to sign "every discovery request, response, or objection," certifying that the signer has read the request "to the best of the person's ... belief formed after a reasonable inquiry… it is ... not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation...."  Fed.

12

R. Civ. P. 26(g)(1).[11]  If a certification is made in violation of Rule 26(g), the "court ... must impose an appropriate sanction upon the signer, the party on whose behalf the signer was acting, or both . . . [which] *may* include an order to pay the reasonable expenses, including attorney's fees, caused by the violation."  Fed. R. Civ. P. 26(g)(3).  The Advisory Committee Notes to the 1983 amendments to Rule 26(g) explain that the signing requirement "means that every discovery request ... should be grounded on a theory that is reasonable under the precedents or a good faith belief as to what should be the law."  1983 Amendment, Advisory Committee Notes, 28 U.S.C.A. Fed. R. Civ. P. 26(g)(3) (2011).

In considering whether to impose sanctions, the Court should take into account "factors such as the needs of the case, the discovery already had in the case, the amount in controversy, and the importance of the issues at stake in the litigation."  *Cincinnati Ins. Co. v. Cochran*, No. 5:05CV93/RV/MD, 2005 WL 5277203 (N.D. Fla. Sept. 22, 2005) *aff'd*, 198 Fed. Appx. 831 (11th Cir. 2006) (unpublished).  "It is the standard practice in this Court for the losers in discovery disputes that are not based on reasonable grounds to have sanctions imposed."  *Id.*; *see also Malautea*, 987 F.2d at 1545 (upholding sanctions where the district court found that discovery objections were interposed for the improper purposes of "caus[ing] unnecessary delay, [increasing] the cost of litigation … and caus[ing] the time for discovery to end before the Plaintiff had obtained the discovery material that she needed to litigate this case").

As discussed above, Plaintiff's Second Requests blatantly ignore this Court's prior

---

[11] On June 3, 2011, counsel for Plaintiff confirmed by email that his signature on the Certificate of Service applies to both the Second Requests and the Certificate.

discovery Orders. Plaintiff could not have served these Second Requests based on a good faith belief that they complied with those Orders. Nor could Plaintiff justifiably believe that the Second Requests would yield any relevant information that Plaintiff has not already had more than ample opportunity to discover. These requests serve no purpose other than to unduly burden Aabar and IPIC by prolonging this litigation and increasing its cost. Accordingly, this Court is required to sanction Plaintiff for its improper misuse of the discovery process. *Malautea*, 987 F.2d at 1545.

### III.   CONCLUSION

Based on the above, Aabar and IPIC respectfully request that this Court 1) enter a Protective Order in this case quashing Plaintiff's Second Requests for Production, and 2) order Plaintiff to pay the reasonable expenses incurred in moving for this Protective Order, including a reasonable attorney's fee, and 3) impose any other sanctions against Plaintiff that the Court deems appropriate.

### **Local rule 3.01(G) certification**

Counsel for Defendants has conferred with counsel for Plaintiff, and Plaintiff objects to the relief sought.

Dated: June 22, 2011

    By: _/s/ Christi R. Adams_____
    John R. Hamilton
    Florida Bar No. 0774103
    jhamilton@foley.com
    Christi R. Adams
    Florida Bar No. 0498351
    cadams@foley.com
    FOLEY & LARDNER LLP
    111 N. Orange Ave., Ste. 1800
    Orlando, FL  32801

                                                                                  Telephone: (407) 423-7656
                                                                                  Facsimile:  (407) 648-1743
                                                                                  *Attorneys for Defendants*

*Of Counsel:*

Henry Weisburg
Karen Hart
Jennifer Rimm
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 848-4000
Facsimile: (212) 646-4000

## **CERTIFICATE OF SERVICE**

       I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished this 22nd day of June, 2011 via filing with the court's CM/ECF system, to Plaintiff's Counsel, John Dotterrer, Akerman Senterfitt, 125 Worth Avenue, Suite 330, Palm Beach, Florida 33480, via filing with the Court's CM/ECF system.

                                                    By:   */s/ Christi R. Adams*
                                                    John R. Hamilton
                                                  Florida Bar No. 0774103
                                                  jhamilton@foley.com
                                                  Christi R. Adams
                                                  Florida Bar No. 0498351
                                                  cadams@foley.com