UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
- TAMPA DIVISION -

| | |
|---|---|
| CAPITAL TRANS INTERNATIONAL, LLC, a Florida limited liability company,<br><br>  Plaintiff,<br><br>v.<br><br>INTERNATIONAL PETROLEUM INVESTMENT COMPANY, a foreign governmental instrumentality, AABAR INVESTMENTS PJSC, a foreign governmental instrumentality and TASAMEEM REAL ESTATE CO., LLC, a foreign company,<br><br>  Defendants. | CASE NO.: 8:10 CV 529-JSM-TGW |

**PLAINTIFF'S RESPONSE[1] IN OPPOSITION TO DEFENDANTS AABAR AND IPIC'S MOTION FOR PROTECTIVE ORDER AND SANCTIONS**

Defendants' Motion "…doth protest too much…"[2]

Defendants object so widely to Plaintiff's narrowing requests that merely follow up on deposition revelations, that they spotlight their own continuing recalcitrance.

Disposing much of Defendants' protestations (e.g. *See*, Defendants' instant Motion at 2, 5), the District Court has already <u>denied</u>, Defendants' recent Motion to prematurely truncate discovery. (Dkt. 102, Endorsed Order of June 29, 2011, denying Defendant's

---

[1] Plaintiff, CAPITAL TRANS INTERNATIONAL, LLC ("CTI"), respectfully responds to Defendants' Aabar Investments PJSC ("Aabar") and International Petroleum Investment Company ("IPIC") Motion for a Protective Order and Sanctions, dated June 22, 2011 (Dkt. 101) (hereinafter "Motion for Protective Order" or "Motion").

[2] ", methinks." Shakespeare, *Hamlet*, Queen Gertrude, Act 3, Scene 2.

{WP784377;1}

Motion to Declare Jurisdictional Discovery Concluded [without prejudice], Dkt. 99, Plaintiff's Response, Dkt. 100).

Plaintiff's jurisdictional discovery is zeroing in on mounting evidence Defendants here strive to suppress that Defendant Aabar, totally controlled and dominated by IPIC's public officials operates to serve a pronounced public purpose – to diversify Abu Dhabi's gushing petrodollars into commercial investments and thereby transport western nations' technology back to Abu Dhabi.

The supplemental document requests that are the subject of Defendant's Motion are directly relevant to the organ factor test set out in the *USX Corp. v. Adriatic Ins. Co.*, 345 F. 3d 190 (3d Cir. 2003), and they are also <u>narrowly tailored</u> to specific documents that were revealed to exist at the court ordered 30(b)(6) depositions of Aabar and IPIC. They are right on target. For this reason also, the supplemental document requests do <u>not</u> seek the same information as before and do <u>not</u> ignore previous discovery orders. Indeed, Defendants had already been ordered to produce some of the records requested, but had not. It is against these requests that may well clinch jurisdiction that Defendants remonstrate. So eager are the Defendants to deflect discovery that in the meet and confer process here, Defendants' counsel did not even fulfill the next step that he suggested.[3]

---

[3] On June 13, 2011, counsel for Defendants called and wrote to counsel for Plaintiff, on the Second Requests. In response and to resolve a discovery dispute extrajudicially, Plaintiff's counsel called Defendants' counsel. Plaintiff informed Defendants that, although they believed the supplemental requests were all proper and likely to lead to discoverable information on the issue of jurisdiction, Plaintiff was willing to further narrow the supplemental requests in the effort to resolve the discovery dispute. *See*, Dkt. 101-3. Defendants' counsel specifically requested that Plaintiff mark-up the supplemental requests and send them so that he could consider them and would advise Plaintiff's counsel. We did as he requested. **Ex. 1**. However, instead of calling or writing, Defendants filed the instant Motion.

Defendants' Motion should be denied, and the Defendants ordered to timely respond to the requests.

## ARGUMENT AND INCORPORATED MEMORANDUM OF LAW

### I. Plaintiff's Second Requests to IPIC are Narrowly Tailored to Lead to Admissible Evidence on Jurisdiction

As explained to the District Court in Response to Defendants' Motion to Declare Discovery Concluded [Dkt. 100 – pp. 3-4], on May 18 and 19, 2011, as the Court ordered, Plaintiff took the depositions of the corporate representatives of Aabar and IPIC. The depositions adduced new and specific facts which go straight to the heart of jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), specifically that IPIC, an admitted government instrumentality, uses Aabar as its non-petroleum commercial and technology investment vehicle to:

> "look for opportunities that have either direct or indirect benefit, in fact, to Abu Dhabi or the UAE."

**Ex. 2**, Aabar Corp. Rep. Dep. p. 185:5-189:10, 191:1-8; Ex. 39-B, p. 195:6-12, 197:4-11. Plaintiff prudently followed up with narrowly tailored requests for unproduced documents that the Defendants' corporate deponents first disclosed. They include "presentation packages" to the IPIC board for transactions concerning its multibillion dollar funding and takeover of Aabar, giving Government Instrumentality IPIC complete control over Aabar's activities and investments and public purposes for them. For example, Aabar holds the majority of its Board meetings not at its own place of business, but in IPIC's conference room, and four out of five of Aabar's directors are IPIC officials. **Ex. 2**, Aabar Corp. Rep. Dep. p. 104:22 – 105:14. Government control and public

purpose are leading factors in determining Defendants Aabar and Tasameem status as government organs. *USX v. Adriatic Insurance Company*, 345 F.3d 190, 211 (3rd Cir. 2003). Plaintiff has alleged as a basis for jurisdiction under FSIA that Aabar is an organ of the Abu Dhabi government (Dkt. 19 at ¶ 9), and thus Plaintiff is entitled to discover whether IPIC took control of Aabar and whether for a national purpose.

Thus, pursuing information from Defendants' depositions on May 26, 2011, Plaintiff promptly served Defendant IPIC with a Second Request for Document Production. (Dkt. 101-2) The documents requested as voluntarily limited by Plaintiff before Defendants filed this Motion seek only "the presentation packages"[4] and Board Minutes showing (1) IPIC's infusion of funds to Defendant Aabar (ultimately resulting in IPIC's acquisition of 86% of Aabar) (Requests Nos. 1-8); (2) IPIC's "loan" to Aabar and amendments thereto (Requests Nos. 9-10); and (3) IPIC taking Aabar private (Requests Nos. 11-12).

### A. IPIC's Investment in Aabar

#### 1. Narrow Documents Requested Bear Directly on Organ Test – Government Control and Purpose.

As shown by the transcript, Plaintiff's counsel labored to have the witness narrow his description of records on which these actions of IPIC infusing billions and to take full control of Aabar were based. **Ex. 3**, IPIC Corp. Rep. Dep. 126-140. e.g.:

> Q: So this report is in the Aabar file?
>
> A: **Yes, for sure.**

---

[4] This was the closest term for the document package used by the IPIC 30(b)(6) witness on deposition. **Ex. 3**, at 133-138.

> Q: What I'm trying to do is get some parameters on what this document is so I can request it from your company and you'll know what I'm talking about – you see? Can you be any more specific as to –
>
> A: **No**, it's like any other investment, we make proposals, we put a set of documents for Board review and approval…

Depo. of Mohamed Hamad Al Mehairi (IPIC Corp. Rep.) pp. 136:19 – 137:2,

[Emphasis Added].

Plaintiff's supplemental requests to IPIC 1-4 specifically ask IPIC to produce the packages described by IPIC's witness.

Requests 5-8 simply and specifically ask for the Board Minutes reflecting the same Aabar takeover transactions.

For these 3 or 4 transactions requested, the presentation packages and board minutes are likely to show IPIC's reasons and purposes. None of these requests ask Defendant to look through everything – Defendant is directed exactly where to look and what to produce.

### 2. Supplemental Requests are for Specific Documents Defendants Have Already Been Ordered to Produce, but Did Not.

In a prior request, Plaintiff had requested "corporate records" concerning IPIC's acquisition of Aabar. See, Dkt. 66 at p. 6-7, Requests Nos. 4-5. Judge Wilson granted those requests. (Dkt. 84 at ¶ 5(a)). However, Defendant IPIC <u>did not produce</u> the board minutes nor the presentation package to its Board that IPIC's deponent clearly, under oath, conceded exist. Thus, the instant more specific requests are for records already

ordered for production.[5]  They are not burdensome, as the IPIC deponent acknowledged that IPIC keeps a separate file for Aabar and these presentation packages are "for sure" in the Aabar file.  **Ex. 3**, IPIC Corp. Rep. Dep. p. 136:14-20.

### B. IPIC's "Loan" to Aabar

IPIC's requests for documents for the presentation package presented to the IPIC Board for IPIC's loan to Aabar (IPIC Supplemental Requests 9-10) are different from previous requests because they seek only a specific package of documents and as they were originally assembled and kept.  In a prior request, Plaintiff sought documents "evidencing the interest free loan, unsecured loan from IPIC to Aabar". (Dkt. 66 at p. 9, Request No. 7)  Judge Wilson also compelled IPIC to respond to this Request. (Dkt. 84 ¶ 5(a)).  Despite the Orders, IPIC <u>did not produce</u> the presentation package to the Board for the loan.  As such, this request is not only proper, but documents responsive to this Request should have already been produced.  The transaction is important because the "loan" is interest free and repayable at the direction of the <u>Payor</u>, Aabar.  **Ex. 4**, Dep. Ex. 20.

### C. IPIC's Taking Aabar Private

Finally, the same narrow description of documents showing IPIC's taking Aabar private and delisting it have never been previously requested, nor has this Court held that such a category of documents is not discoverable.  Such limited documents will show the

---

[5] The presentation packages for IPIC's takeover of Aabar are also different from previous requests because they focus on a specific "package" of documents that IPIC's 30(b)(6) representative testified existed for each transaction presented to the IPIC Board. **Ex. 3**, IPIC Corp. Rep. Dep. p. 136:21 – 138:8.

{WP784377;1}　　　　　　　　　　　　　　　　6

"reason and/or purpose" presented to the IPIC Board for approval of Aabar's delisting is relevant to show IPIC's control over, and purposes of Aabar.

## II. Plaintiff's Second Requests to Aabar are Narrowly Tailored to Lead to Admissible Evidence on Jurisdiction

Plaintiff's Second Request to Aabar served May 26, 2011 (Dkt. 101-1) seek corresponding Aabar board presentation packages and minutes <u>showing</u> (1) the "reason and/or purpose" for investments in certain U.S. and European companies identified at Aabar's 30(b)(6) deposition (Dkt. 101-1, Requests Nos. 1-4); (2) applications to CFIUS for Aabar's purchase of 32% of Virgin Galactic, LLC (Dkt. 101-1, Request No. 5)[6]; and (3) minutes or resolutions appointing the Aabar Board of Directors (Dkt. 101-1, Requests No. 8-11). Each request seeks a narrow set of records directing Defendants exactly where to look. With new information adduced at Defendants' depositions, not yet taken at the time of prior hearings it is now clear that these requests seek information plainly bearing on the FSIA jurisdictional government organ entity purpose test.

### A. Aabar's Reason and Purpose in U.S. Investments

Board presentations and minutes showing the "reason and/or purpose" for investments in Virgin Galactic, LLC, XOJET, Inc., Carnegie 57 and Mercedes are relevant to show Aabar's national, public purpose.[7] Aabar's 30(b)(6) representative

---

[6] Although Plaintiff believes Requests 5-7 are different from prior requests because they seek only the applications to specific U.S. government regulatory committees, in an effort to simplify the issue, Plaintiff will withdraw Request Nos. 6-7 from its Second Request for Production of Documents to Aabar.

[7] These requests are different from prior requests because they only seek a very limited category of documents instead of all documents concerning the investments. *Compare*, Dkt. 56 at p. 16, 19-20, Requests Nos. 20, 23, 24 and 25. Defendants are directed exactly where to look.

authenticated and testified in his deposition that following statements made to the public were accurate:

> **Aabar Chairman and Managing Director of IPIC**: *"Aabar's stake in Virgin Galactic will open a new venue of opportunity for Abu Dhabi in this unique and dynamic business. The significant partnership not only falls in line with Abu Dhabi's larger plans to inculcate technology research and science at a grassroots level but also complements its aim to be the international tourism capital of the region."*

[**Ex. 2**, Aabar Corp. Rep. Dep. p. 207-208 and **Ex. 5**, Dep. Ex. 40]

> **Aabar CEO**: *"We look for opportunities that have either direct or indirect benefit, in fact, to Abu Dhabi or the UAE."*

[**Ex. 2,** Aabar Corp. Rep. Dep. p. 185:5-189:10, 191:1-8; p. 195:6-12, 197:4-11]

> **Aabar CEO**: *"We're majority owned by IPIC, International Petroleum Investment Company, which is 100 percent owned by Abu Dhabi Government."*

[**Ex. 2**, Aabar Corp. Rep. Dep. p. 192:1-4; p. 199:8-10]

> **Aabar CEO**: *"My Chairman, His Excellency Khadem Al Qubaisi, who heads IPIC as managing director, is an enormously active man. And more often than not when he comes to us and – and pushes down opportunities in deal flows that most them go to IPIC, when he pushes them to us they tend to be good ones."*

[**Ex. 2**, Aabar Corp. Rep. Dep. p. 194:11-17; p. 199:8-10]

> **Aabar CEO**: *"Anything we evaluate as an investment if it has either a direct or indirect benefit back to Abu Dhabi, we look at it very closely."*

[**Ex. 2**, Aabar Corp. Rep. Dep. p. 195:10-12; p. 199:8-10]

Furthermore, Aabar has made the following public statements through its Press Releases, available in its website:

> **Aabar Chairman & Managing Director of IPIC**: [In connection with Aabar's purchase of Abu Dhabi Commercial Bank's 24.9% stake in RHB Capital Berhad] *"This significant investment by Aabar affirms the commitment of Abu Dhabi to Malaysia and will further enhance the strong positive relationship between our countries."*

[Aabar Press Release, dated June 17, 2011: http://www.aabar.com/index.php?option=com_content&view=article&id=431%3Aadcb-sells-its-stake-in-rhb-to-aabar&catid=2%3Alatest-news&Itemid=8&lang=en]. **Ex. 6**.

> **Aabar Chairman & Managing Director of IPIC**: [In connection with the establishment of Aabar Properties] *"the decision to direct the company to recently deal in the real estate sector does coincide with the sublime directives of HH [His Highness] Sheikh Mansour Bin Zayed Al Nahayyan and his kind support to maximize Aabar's investments for achieving the development and urban renaissance prevailing in the Emirate of Abu Dhabi, especially when Abu Dhabi city had become in need of real estate projects to meet the growing demands."*

*Id.*

> **Aabar CEO:** [In connection with the establishment of Aabar Properties] *"Our self-financing capability emanates from our status as **an Abu Dhabi government subsidized company**."*

[Aabar Press Release: May 3, 2010: http://www.aabar.com/index.php?option=com_content&view=article&id=382%3Aaabar-properties&catid=2%3Alatest-news&Itemid=8&lang=en&limitstart=1] [emphasis added] **Ex. 7**.

> **Aabar CEO:** [In connection with the establishment of Aabar Properties] *"Furthermore, the most important issue in this regard is that 'Aabar Investments PJSC' company is 84% subsidized by an Abu Dhabi government company, i.e., 'IPIC'*

>   *company. This would definitely vouch for its capabilities and credibility in financing its projects and investments in all sectors."*

*Id.*

These statements reveal that Aabar holds itself out to the worldwide public that government subsidized Aabar funds projects that are "good for Abu Dhabi" and that "benefit Abu Dhabi." To a U.S. audience at Oshkosh, Wisconsin, Aabar approved, at the ceremony of Aabar's purchase of Virgin Galactic, LLC (a U.S. space tourism business regulated by the U.S. Government), of Sir Richard Branson's statement that it was "wonderful to be working with Abu Dhabi." **Ex. 2**, Aabar Corp. Rep. Dep. p. 203:8-9; 203:13-22, 204:20 – 205:3.

As these statements demonstrate, Aabar represents itself as having the national, public purpose to benefit Abu Dhabi and as being subsidized and one and the same as the government. Therefore, the minutes and presentation to the Board showing the "reason and/or purpose" for these investments including in the U.S. will lead to admissible evidence on Aabar's national and public purpose, leading factors in determining organ status under FSIA.

### B.     Aabar's Application for CFIUS Approval

Aabar supplemental request No. 5 seeks the applications submitted by Aabar to CFIUS for Aabar's investment in Virgin Galactic, LLC (Delaware). CFIUS is an acronym for Committee on Foreign Investment in the United States and is an inter-agency committee authorized to review transactions that could result in control of a U.S. business by a foreign person in order to determine the effect of such transactions on the

national security of the United States. *See* **Ex. 8**, http://www.treasury.gov/resource-center/international/Pages/Committee-on-Foreign-Investment-in-US.aspx. CFIUS operates pursuant to section 721 of the Defense Production Act of 1950, as amended by the Foreign Investment and National Security Act of 2007 (section 721) and as implemented by Executive Order 11858, as amended, and regulations at 31 C.F.R. Part 800. *Id*.

Aabar's 30(b)(6) deponent testified that Aabar was required to seek CFIUS approval of its stake in Virgin Galactic, LLC and did in fact seek such approval. **Ex. 2**, Aabar Corp. Rep. Dep. p. 170:8 – 171:7. As part of the approval process, applicants must provide the information contained in 31 C.F.R. § 800.402. *See* **Ex. 9**, http://www.treasury.gov/resource-center/international/foreign-investment/Pages/cfius-filing-instructions.aspx. A required statement that an applicant such as Aabar must provide for CFIUS approval is:

> "[w]hether the foreign person is controlled by or acting on behalf of a foreign government, including as an agent or representative, or in some similar capacity, and if so, the identify of the foreign government."

31 C.F.R. § 800.402 (c)(6)(iii).

As such, Aabar's application to CFIUS regarding the Virgin Galactic investment will demonstrate whether Aabar <u>has already admitted</u> to the U.S. Government that it is controlled by, or acting on behalf of the governments of Abu Dhabi or UAE. Therefore

the requested specific document is directly relevant to the issue of jurisdiction under FSIA.[8]  Defendants know right where to look for it.

### C.   Aabar's Appointment of Four IPIC Officials to the Board of Directors

Plaintiff requests Nos. 8-11 to Aabar are also valid follow ups to Defendants' depositions.  The board minutes and resolutions showing the appointment of Aabar Board Members, H.E. Khadem Abudulla Al Qubaisi, Mohammed Badawy Al-Husseiny, Mohammed Hamad Al Mehairi, Murtadha Al Hashmi and Mohammed Ali Al Fahim, are relevant because four out of the five board members of Aabar are IPIC officials. **Ex. 2**, Aabar Corp. Rep. Dep. p. 46:1-7.  In particular, IPIC's Managing Director, His Excellency Khadem Al Qubaisi, is also the Chairman of Aabar.  **Ex. 2**, Aabar Corp. Rep. Dep. p. 38:17 – 39:18.  IPIC installing its officials, including IPIC's Managing Director as a super majority of the Aabar Board, is evidence of complete control by IPIC.  **Ex. 2**, Aabar Corp. Rep. Dep. p. 102:22-24, 104:22-25.  Further, Aabar's 30(b)(6) deponent, the only non-IPIC official on the Aabar Board, testified in his deposition that when he needs IPIC's approval for an investment or loan, he informally approaches one of the other Aabar Board members since they are also IPIC officials. **Ex. 2**, Aabar Corp. Rep. Dep. p. 81:5-23.  Thus, Plaintiff is certainly entitled to discover the circumstances and reasons surrounding appointment of the four IPIC officials to the Aabar Board, which are likely to be included within the minutes or resolutions requested.  These requests are slim and narrowed.  Defendant need only look for such entries in its corporate minute book.

---

[8] As stated above, though Plaintiff believes them also valid, to simplify this process, Plaintiff will withdraw Aabar Requests Nos. 6-7.

### III. Plaintiff's Second Requests Were Issued in Good Faith and Do Not Oppress an Undue Burden Upon Defendants; There is No Showing of Good Cause to Grant a Protective Order

One seeking a protective order under Rule 26(c) carries the burden of showing good cause and/or the right to be protected. *International Ass'n of Machinists and Aerospace Workers v. P & B Transport*, 2007 WL 4145974, *2 (M.D. Fla. 2007); *see also Edwards v. Accredited Home Lenders, Inc*. 2008 WL 1756364, *3 (S.D. Ala. 2008) (motion for protective order denied where movant did not make adequate showing that party abused discovery process); *Contour Products, Inc. v. Albecker*, 2009 WL 196106, *1 (S.D. Fla. 2009)(motion for protective order denied where movant failed to identify any specific requests from which he sought protection and failed to make a particular and specific demonstration of fact as to how responding to any particular discovery request will cause harm); *Sierra Equity Group v. White Oak Equity Partners, LLC*, 672 F. Supp. 2d 1369, 1371 (S.D. Fla. 2009) (Rule 26(c) is based on the standard of "good cause" which calls for a "sound or legitimate need" to limit discovery of the subject information.). This burden "contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *International Ass'n of Machinists*, 2007 WL 4145974, *2, *citing U.S. v. Garrett*, 571 F. 2d 1323, 1326 n. 3 (5th Cir. 1978). Here, Defendants merely state that the recent supplemental discovery is improper, in their view unduly burdensome because the Court before these depositions denied discovery on similar information and limited others. (Dkt. 101 at p. 6). As demonstrated above, the prior requests to IPIC were different, and if anything, <u>granted</u> by the Court. As shown above they seek documents now acknowledged by deponents to

exist that should have been previously produced. The prior requests to Aabar were also different and now, post depositions, have been refined and limited in scope. Requests to Aabar regarding the applications to CFIUS will demonstrate whether Aabar has admitted it is controlled by the government of Abu Dhabi, which Aabar now endeavors to deny in its papers in this litigation. Requests on the appointment of the Aabar Board are certainly relevant as demonstrated *supra* at § II.

And the cases cited by Defendants for their unfounded argument that Plaintiff's supplemental requests are improper are completely distinguishable. For instance, in *Scheidemann v. Qatar Football Ass'n* , 2008 WL 144846 (S.D.N.Y. 2008), the Plaintiff, unlike here, did not allege facts regarding the Court's jurisdiction under FSIA over the Defendant. *Id* at *6. *Supra Medical Corp. v. McGonigle*, 955 F. Supp. 374 (E.D. PA 1997) is similarly distinguishable because the Defendants in that case failed to produce any evidence whatsoever that they were controlled by the United Kingdom or had a national or public purpose in order to receive FSIA immunity protection. *Id*. at 379. Finally, *Butler v. Sukhoi Co*., 579 F. 3d 1307 (11th Cir. 2009) is also distinguishable because jurisdictional discovery was not conducted there. Plaintiff had not alleged that a FSIA exemption applied. *Id*. at 1311-1312.

## IV. Sanctions Are Not Appropriate

Defendants' shrill request for sanctions is unseemly and should be denied. Indeed, the only case Defendants cite in support is the Eleventh Circuit's primary case for the complete and egregious disregard of defendant in the discovery process and for its bad

faith refusal to produce and cover up of damaging evidence. *See, Malautea v. Suzuki Motor Co.*, Ltd., 987 F. 2d 1536. As to Plaintiff, none of that is nearly the case here.

Here, Plaintiff's supplemental requests are consistent with the federal rules and with this Court's Order authorizing discovery on the issue of jurisdiction (Dkt. 47, 48) and the Order denying Defendants' Motion to Close Discovery (Dkt. 102). They are legitimate specific follow ups to new information confirmed at Defendants' depositions and are directly relevant to the determination of federal jurisdiction under the FSIA. They follow up on documents Defendants were already ordered to produce. They are narrowly tailored. They are not unreasonable or unduly burdensome.

Additionally, unlike Defendants state in their Motion (at p. 12), there has been absolutely no disregard for the Court's Orders on discovery. Instead, it has been Defendants that have prolonged litigation and added additional costs by attempting to block all discovery from the outset of this case. In that position, Defendants have knowingly incurred the expense of filing three (3) motions to stay discovery (Dkt. 17, 22, 30) and opposed six (6) motions to compel. (Dkt. 75, 76, 77) Yet, at every stage, the Court has agreed, at least in part, with Plaintiff and ordered the Defendants to respond. (Dkt. 84 and 94) Defendants cannot now be heard to complain. As shown above, Defendant even failed to complete their own suggested "meet and confer" procedure, and filed this motion without discussing Plaintiff's offered revisions. These supplemental requests are proper, seek relevant information that has been authorized for discovery by previous Court Orders, and are narrowly tailored to the recent testimony. As such, Defendants' request for sanctions is hollow and should be denied.

## **CONCLUSION**

WHEREFORE, Plaintiff respectfully requests that the Court deny Defendants Aabar and IPIC's Motion for a Protective Order and Sanctions (Doc. 101), order that Defendants fully respond to Plaintiff's Second Requests for Production to Aabar and IPIC, dated May 26, 2011, and for all other relief this Court deems just and proper.

Dated: July 6, 2011

                                                        Respectfully submitted,

                                                        AKERMAN SENTERFITT

                                                        By:  *s/ John C. Dotterrer*
                                                        John C. Dotterrer, Esq.
                                                        Florida Bar No.: 267260
                                                        125 Worth Avenue, Suite 330
                                                        Palm Beach, FL 33480
                                                        Tel: (561) 659-8660
                                                        Fax: (561) 659-8679
                                                        Email: john.dotterrer@akerman.com

                                                        and

                                                        Jenny Torres, Esq.
                                                        Florida Bar No.: 785881
                                                        One Southeast Third Avenue, 25th Floor
                                                        Miami, FL 33131
                                                        Tel: (305) 982-5617
                                                        Fax: (305) 349-4649
                                                        Email: jenny.torres@akerman.com

                             *Attorneys for Capital Trans International, LLC*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 6, 2011, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all registered CM/ECF participants, including counsel for the Defendants, listed below:

| | |
|---|---|
| **Foley & Lardner LLP** | **Shearman & Sterling LLP** |
| 111 N. Orange Avenue, Suite 1800 | 599 Lexington Avenue |
| Orlando, Florida 32801 | New York, NY 10022 |
| Telephone: (407) 423-7656 | Telephone: (212) 848-4000 |
| Facsimile: (407) 648-1743 | Facsimile: (212) 646-4000 |
| John R. Hamilton, Esq. | Henry Weisburg, Esq. |
| jhamilton@foley.com | hweisburg@shearman.com |
| Christi R. Adams, Esq. | |
| cadamas@foley.com | |

By: *s/ John C. Dotterrer*
John C. Dotterrer, Esq.
Florida Bar No.: 267260