UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

```
-----------------------------------------------------------------x
CAPITAL TRANS INTERNATIONAL, LLC,             :
a Florida limited liability company,          :
                                              :
                Plaintiff,                    :
                                              :
        -against-                             :
                                              :    Case No. 8:10-CV-529-30TGW
INTERNATIONAL PETROLEUM                       :
INVESTMENT COMPANY, a foreign company,        :
AABAR INVESTMENTS PJSC, a foreign             :
company, and TASAMEEM REAL ESTATE CO,         :
LLC, a foreign limited liability company,     :
                                              :
                Defendants.                   :
-----------------------------------------------------------------x
```

### AABAR INVESTMENTS PJS'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS

Jurisdictional discovery in this case has now lasted more than a year. Plaintiff has received complete discovery on every issue of possible relevance to jurisdiction from Defendant Aabar Investments PJS (formerly known as Aabar Investments PJSC, "Aabar"). That discovery conclusively establishes that Aabar – a publically owned and traded investment company at all times relevant to this case[1] – is not an instrumentality of the Government of Abu Dhabi for the purposes of the Foreign Sovereign Immunities Act ("FSIA"). That discovery further establishes that Aabar has no contacts with Florida and is thus not subject to personal jurisdiction under the Florida Long-Arm Statute.

---

[1] *Dole Food Co. v. Patrickson*, 538 U.S. 468, 480 (2003) (finding that an entity's status as an instrumentality is determined at the time the complaint is filed).

4831-1371-8286.1

Plaintiff's present Motion to Compel Production of Documents from Aabar (Dkt. No. 120 (the "Motion to Compel")) is the eleventh motion to compel filed by Plaintiff. (*See* Dkt. Nos. 34, 51, 52, 54, 56, 66, 67, 87, 88, 107, 121.) The majority of Plaintiff's requests in its earlier motions were denied. Nevertheless, in a transparent attempt to harass Defendants and delay its day of reckoning, Plaintiff now seeks to bypass this Court's prior rulings and compel requests for documents nearly identical to those that this Court has already determined are not jurisdictionally relevant.

All of Plaintiff's allegedly "new" theories for why these documents should be produced were considered – and rejected – by this Court in response to Plaintiff's prior motion to compel the same requests. And even if this Court had not already denied requests for substantially similar discovery, Plaintiff's latest attempt to explain why this discovery is warranted fails because it misstates both the record and controlling law. The Court should therefore deny Plaintiff's Motion to Compel and request for fees as improper and award to Aabar the expenses it incurred as a result of having to respond to this baseless and unnecessary motion.

## BACKGROUND

On September 17, 2010, Magistrate Judge Wilson ordered that discovery be limited to the jurisdictional issues in this case. (Dkt. No. 47.) On November 30, 2010, Judge Moody also ordered discovery limited to the issues of whether Defendants International Petroleum Investment Company ("IPIC") and Aabar were subject to jurisdiction pursuant to the FSIA and whether Defendant Tasameem was subject to jurisdiction pursuant to the Florida Long-Arm Statute. (Dkt. No. 48 (collectively with Dkt. No. 47, the "Orders").) Despite the

Court's explicit limitation on discovery, Plaintiff served extensive document requests (the "First Requests") and interrogatories on Aabar and the other Defendants that far exceeded the scope of the Orders.[2]  Defendants timely served their responses, including objections, to Plaintiff's excessive discovery.  (Dkt. Nos. 75 at Exhibit ("Ex.") A; 76 Ex. A; 77 Ex. A.)

Plaintiff claimed that Defendants' responses were not sufficient, and filed three Motions to Compel Production of Documents and three Motions to Compel Complete Interrogatory Answers from Defendants.  (Dkt. Nos. 51-52, 54, 56, 66-67.)  Defendants filed consolidated oppositions to these motions on February 24, 2011.  (Dkt. Nos. 75-77.)

A hearing was held on Plaintiff's Motions to Compel on March 11, 2011.  The Court ordered that Aabar respond to a limited number of Plaintiff's requests.  (Dkt. No. 84 (the "March 11 Order").)  Aabar timely served its responses on March 31, 2011.  Aabar also produced one of its most senior officers for deposition in Florida on May 18, 2011.

On May 26, 2011, Plaintiff served Aabar with the Second Request for the Production of Documents.  (Dkt. No. 101 at Ex. A (the "Second Requests").)  After conferring with Aabar regarding its objections to the Second Requests, Plaintiff refused to withdraw its Second Requests but offered minor revisions by letter dated June 16, 2011.  (Dkt No. 101 at Ex. C.)  Aabar moved for a protective order on June 22, 2011 (Dkt. No. 101) and served Plaintiff with objections and responses to the Second Requests five days later (attached

---

[2] To date, Plaintiff has served Aabar with 19 interrogatories and 68 document requests, IPIC with 12 interrogatories and 65 document requests, and Tasameem with 16 interrogatories and 51 document requests pursuant to these Orders.  These figures include Third Requests for Production of Documents served on Aabar and IPIC on November 22, 2011, which focus exclusively on a 2011 loan extended from IPIC to Aabar – a loan that can have no relevance to Plaintiff's jurisdictional allegations.  *Dole*, 538 U.S. at 480.

hereto as Exhibit ("Ex.") A). The Court denied Aabar's motion on procedural grounds on July 26, 2011. (Dkt. No. 106.) Aabar served supplemental objections and responses to the Second Requests on June 27, 2011 (attached hereto as Ex. B). Plaintiff waited nearly four months, and then Plaintiff filed this Motion to Compel.

**I.  Plaintiff Improperly Seeks Documents Which This Court Has Already Held Are Not Subject to Jurisdictional Discovery**

Requests 1-5 of Plaintiff's Second Requests, which are the subject of Plaintiff's motion, seek documents pertaining to Aabar's alleged investment in, and applications to U.S. governmental bodies for approval of investments in, Virgin Galactic, LLC; XOJET, Inc., a U.S. aviation company; a New York City construction project; and Mercedes (a/k/a Daimler AG).[3] None of these investments are the subject of Plaintiff's suit, and none connect Aabar to the State of Florida.

In his March 11 Order, Judge Wilson denied Plaintiff's Motion to Compel responses to First Requests 20-24, which sought information about the exact same transactions and applications as those sought in this motion on the grounds that such information is irrelevant under Plaintiff's jurisdictional theory.[4] (*See* Plaintiff's Motion to Compel Production of Documents from Aabar, Dkt. No. 56 ("First Motion to Compel" or "First MTC"), at 16-20; March 11 Order at 2.) In light of this decision, Plaintiff's requests are facially improper.

---

[3] Plaintiff subsequently "narrowed" its Second Requests to board presentations or minutes showing Aabar's "purpose or reason" for its U.S. investments. (*See* Letter from Plaintiff's Counsel, dated June 16, 2011, Dkt. No. 101 at Ex. C)

[4] Plaintiff failed to move to compel First Request 25, apparently conceding the irrelevance of Aabar's investment in Mercedes. (*See* First MTC at 20-21.)

In order to justify its disregard of this Court's prior Order, Plaintiff claims that its First Requests are not the same as the requests it now seeks to compel because the First Requests were "general in scope" while the documents currently sought relate specifically to Aabar's function and relationship to IPIC.  (MTC at 4.)  This claim is disingenuous, at best.  Plaintiff's First Requests were interposed after it had amended its complaint to allege that Aabar was an instrumentality "directed" by the Government of Abu Dhabi.  (Amended Complaint, Dkt. No. 19, ¶ 9.)  In fact, in its First Motion to Compel, Plaintiff made the exact same argument it makes here – that the documents it sought (and now seeks again) were necessary to establish that Aabar is an "organ" of that Government because the Government, HRH Sheik Mansour, and/or IPIC use Aabar as an investment "vehicle."  (First MTC at 16-17, 19, 20; *see also* First MTC at 5, 11, 22.)   The March 11 Order rejected that argument and plaintiff cannot circumvent this result by claiming that its nearly identical requests are somehow different.[5]

---

[5] Plaintiff's Second Request 5, which seeks "applications submitted by Aabar to CFIUS (a U.S. Government regulatory committee or agency) for Aabar's investment in Virgin Galactic, LLC," is an example.  Plaintiff argues that this Request is relevant to the issue of FSIA jurisdiction because it will show that Aabar "is controlled by, or acting on behalf of, the governments of Abu Dhabi or UAE." (MTC at 13.)  But Plaintiff advanced an identical argument in its First Motion to Compel with respect to First Request 21, where it contended that "documents, applications, permits and/or correspondence concerning US Government approval of Aabar's investment in Virgin Galactic, LLC" were "likely to lead to the discovery of admissible evidence that the Government of Abu Dhabi is heavily involved in the transaction and is using Aabar as its vehicle . . . and disclose the Abu Dhabi Government's involvement in Aabar and the Virgin Galactic, LLC investment." (First MTC at 17.)  The Court has already rejected Plaintiff's argument and Plaintiff offers nothing that would support a different result.

II.  **Plaintiff's "New" Rationale for the Requested Documents Misstates the Record and Controlling Law**

Plaintiff's repackaged argument for seeking discovery that this Court has already rejected is based on a blatant misstatement of the record in this case and a complete disregard for controlling law. Plaintiff alleges that the deposition of Mohamed Ahmed Badawy Al-Husseiny, Aabar's CEO, "revealed new and specific facts which go straight to the heart of jurisdiction under the FSIA." (MTC at 4.) Specifically, Plaintiff claims that the deposition showed that "IPIC, an admitted Abu Dhabi government instrumentality, uses co-Defendant Aabar as its non-petroleum commercial and technology investment vehicle to look for opportunities that benefit Abu Dhabi or the UAE." (*Id.* at 11.)

This is an outright misstatement of Mr. Al-Husseiny's deposition testimony. Mr. Al-Husseiny never testified during his deposition that Aabar is used as an investment vehicle for the Government to bring technology to Abu Dhabi. In fact, he said the exact opposite:

> Q. Is one of the purposes of Aabar to bring technology to Abu Dhabi?
> A. Aabar is a commercial investment company.
> Q. Is it used to bring technology to Abu Dhabi?
> A. I'm not sure I understand the question. Is it used by who?
> Q. By anyone such as its parent?
> A. Not to my knowledge.

(Mohamed Ahmed Badawy Al-Husseiny ("Aabar Corp. Rep.") Dep. at 184:5-184:12 (Dkt No. 101 at Ex. D).)

Mr. Al-Husseiny consistently testified during his deposition that Aabar's investment decisions are not controlled by IPIC or the Government of Abu Dhabi and that Aabar

6

operates independently from that Government.[6]  Moreover, his testimony is fully corroborated by all the discovery that Plaintiff received prior to Mr. Al-Husseiny's deposition and the deposition testimony of Mr. Al Mehairi, IPIC's Investment Director.[7] Accordingly, there is absolutely no basis for believing that additional documents will show that Aabar performs any exclusive public function on behalf of the government.[8]

---

[6] *See* Aabar Corp. Rep. Dep. at 81:4 ("IPIC does not designate what investments Aabar makes."), 105:10-11 ("IPIC is a shareholder in Aabar.  IPIC has no involvement in Aabar board matters.") (Dkt. No. 101 at Ex. E).  *See also id.* at 86:11-19 (attached hereto as Ex. C) (explaining that when Aabar receives funds from IPIC, "they come in to inject capital" but that capital is not "designate[d] specifically for only one investment"); Mohamed Hamad Al Mehairi ("IPIC Corp. Rep.") Dep. at 82:11-83:4 (identifying IPIC's 64% investment in Borealis, a petrochemical company, as IPIC's only investment intended to "bring technology back to Abu Dhabi" to date); 83:25-84:1 (stating that "This is not the only reason [IPIC] invest[s] - just because of technology" and that technology investments are pursued "if there is a value added" by them); 84:10-85:16 (explaining that Aabar, not IPIC, acquired Mercedes and that Aabar "invest[ed] in many companies and IPIC supported . . . [Aabar's] growth and strategy - simple as this") (attached hereto as Ex. D).

[7] *See* Declaration of Mohamed Badawy Al-Husseiny ("Al-Husseiny Decl."), Dkt. No. 29 at Ex. 2, ¶¶ 4-6 (stating that Aabar does not perform a public activity, the government does not supervise Aabar's affairs, and Aabar is overseen by a Board of Directors appointed by shareholder vote); Aabar's Objections and Responses to Plaintiff's Amended Set of Interrogatories, Response to Interrogatory Number 11, at 7 (Dkt No. 101 at Ex. F) ("At the time relevant to the jurisdictional allegations in the Amended Complaint, Aabar did not receive financial support from the Government of Abu Dhabi, nor was it supervised by it."); Aabar's Further Objections and Responses to Plaintiff's Amended Set of Interrogatories, Response to Interrogatory Number 5, at 6-7 (Dkt No. 101 at Ex. G) (stating that Aabar is governed by a Board of Directors appointed by shareholder vote).

[8] Although Plaintiff claims that the Second Requests are prompted by information revealed during Mr. Al-Husseiny's deposition, the Motion to Compel relies almost exclusively on press releases which Plaintiff argues show that "Aabar holds itself out to the worldwide public as a government subsidized company that invests in projects that 'benefit Abu Dhabi.'" (MTC at 6.)  As an initial matter, two of these press releases post-date the filing of the Complaint and therefore have no relevance to Plaintiff's jurisdictional allegations. *Dole*, 538 U.S. at 480.  Moreover, Plaintiff cherry-picks language from documents which, when viewed in whole, plainly contradict the conclusion that Aabar undertook these investments

In addition, as Plaintiff continuously fails to acknowledge, the fact that IPIC is a shareholder in Aabar is not relevant to whether Aabar is an instrumentality of the Abu Dhabi Government for purposes of the FSIA. *Dole*, 538 U.S. at 480 (holding that ownership through a parent corporate wholly owned by a foreign sovereign is insufficient to satisfy the "ownership" test under 28 U.S.C. § 1603(a)(2)). Nor is IPIC's controlling investment dispositive of the question of Aabar's status as an organ of that Government.[9] IPIC is not the Government of Abu Dhabi. Rather, it is a "government instrumentalit[y] established as [a] juridical entit[y] distinct and independent from" Abu Dhabi and, as the Supreme Court has held, "should normally be treated as such." *First Nat. City Bank v. Banco Para El Comercio*, 462 U.S. 611, 627 (1983); *Dole*, 538 U.S. at 474 (holding that because Congress "had corporate formalities in mind" when enacting the FSIA, the general rule is that corporate formalities will be respected); *Scheidemann v. Qatar Football Ass'n*, 2008 WL 144846

---

primarily for the public good. The June 17, 2011 press release Plaintiff cites explains that Aabar's investment in RHB Capital Berhad, a Malaysian bank, was motivated by the expectation of "profitable future growth of the [Malaysian] banking industry" and the belief that it would add "a core asset to Aabar's financial services investments portfolio." (Dkt. No. 103 at Ex. 6.). The May 3, 2010 press release indicates that Aabar Properties pursues real estate projects with the hope of "boosting the attraction of mother company Aabar Investment PJSC shares." (Aabar Press Release, dated May 3, 2010, attached hereto as Ex. E, at 6.) And the July 28, 2009 press release merely notes that Aabar's 32% stake in Virgin Galactica "complements" and "falls in line with" Abu Dhabi's agenda of growing its tourism and scientific research industries. (Dkt. No. 103 at Ex. 5.) As discussed more fully below, merely promoting Aabar's contributions to the economy of the United Arab Emirates does not suggest that Aabar's *primary functions* are governmental.

[9] In fact, as Mr. Al Mehairi testified, IPIC has majority ownership in numerous companies throughout the world. (IPIC Corp. Rep. Dep. at 127: 21-24 (listing Hyundai, Borealis, Aabar, Nova, and Ferrostaal as significant operating companies) (attached hereto as Ex. F). If Plaintiff's logic is accepted, all of these investments must be considered organs of the Government of Abu Dhabi, which is clearly incorrect.

(S.D.N.Y. Jan. 15, 2008) (finding citing the above and holding that the separate "formal legal status" of entities should be given "significant weight" in the FSIA analysis).[10]

Finally, the requested documents are irrelevant to whether or not Aabar performs a traditional public function. As all of the discovery already provided demonstrates, Aabar is a global investment company whose purpose is to maximize the value of its shares through strategic investments. It is obvious on its face that a request for documents pertaining to Aabar's investment in, for example, a New York City skyscraper or a U.S. aviation company could not show that Aabar carries out a core government function within Abu Dhabi. Equally absurd is Plaintiff's position that Aabar performs a "national" or "public" function, but information about that function can only be derived from confidential board materials related to investments in foreign businesses. (MTC at 7-9.) And even if Plaintiff could show that Aabar touted the benefit of its investments to Abu Dhabi society in these materials, corporate objectives that provide an incidental national benefit do not demonstrate the kind of "public" purpose contemplated by the FSIA. *Scheidemann*, 2008 WL 144846 at \*3-5 (finding that an entity "formed for the purposes of promoting football in Qatar and for arranging matches for the Qatari national football team around the world" did not serve a public function that entitled it to sovereign immunity); *Supra Med. Corp. v. McGonigle*, 955 F. Supp. 374, 379 (E.D. Pa. 1997) (finding that an entity created by an act of Parliament to

---

[10] *See also Patrickson v. Dole Food Co.*, 251 F.3d 795, 807 (9th Cir. 2001), *aff'd in part, cert. dismissed in part*, 538 U.S. 468 (2003) ("[A]n entity wholly owned by 'an agency or instrumentality of a foreign state' is not owned by a 'foreign state or a political subdivision thereof'") (citing *Corporacion Mexicana de Servicios Maritimos, S.A. de C.V. v. M/T Respect,* 89 F.3d 650, 655 (9th Cir. 1996).).

promote medical and dental education in the United Kingdom, which was 70% funded by the government, and accounted to the government for its spending, was not an organ).

Plaintiff has set forth no new or legitimate justification for seeking documents that this Court has already held are outside the scope of jurisdictional discovery and, accordingly, the present motion should be denied in its entirety.  Moreover, Aabar has unnecessarily incurred expenses, including attorneys' fees, as a result of Plaintiff's repeated filing of meritless motions in this case, including the instant Motion to Compel.  Pursuant to Fed. R. Civ. P. 37(a)(5)(B), Aabar respectfully requests that the Court award Aabar reasonable expenses incurred in opposing this motion, including a reasonable attorney's fee, and impose any other sanctions against Plaintiff that the Court deems appropriate.

## CONCLUSION

Based on the above, Aabar respectfully requests that this Court deny Plaintiff's Motion to Compel Production of Documents from Aabar Investments PJS and order Plaintiff to pay the reasonable expenses incurred in opposing this motion, including a reasonable attorney's fee, and impose any other sanctions against Plaintiff that the Court deems appropriate.

Dated: December 2, 2011

By*: /s/ Christi R. Adams*

Henry Weisburg
Karen Hart
Jennifer Rimm
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 848-4000
Facsimile: (212) 646-4000

*Attorneys for Defendants*

*Of Counsel:*

John R. Hamilton
Florida Bar No. 0774103
jhamilton@foley.com
Christi R. Adams
Florida Bar No. 0498351
cadams@foley.com
FOLEY & LARDNER LLP
111 N. Orange Ave., Ste. 1800
Orlando, FL  32801
Telephone: (407) 423-7656
Facsimile:  (407) 648-1743

## **CERTIFICATE OF SERVICE**

        I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished this 2nd day of December, 2011 via filing with the court's CM/ECF system, to Plaintiff's Counsel, John Dotterrer, Akerman Senterfitt, 125 Worth Avenue, Suite 330, Palm Beach, Florida 33480.

By:    */s/ Christi R. Adams*
John R. Hamilton
Florida Bar No. 0774103
jhamilton@foley.com
Christi R. Adams
Florida Bar No. 0498351
cadams@foley.com

4831-1371-8286.1