UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

---------------------------------------------------------------------x
CAPITAL TRANS INTERNATIONAL, LLC, :
a Florida limited liability company, :
 :
                Plaintiff, :
 :
                -against- :
 :   Case No. 8:10-CV-529-30TGW
INTERNATIONAL PETROLEUM :
INVESTMENT COMPANY, a foreign company, :
AABAR INVESTMENTS PJSC, a foreign :
company, and TASAMEEM REAL ESTATE CO., :
LLC, a foreign limited liability company, :
 :
                Defendants. :
---------------------------------------------------------------------x

**INTERNATIONAL PETROLEUM INVESTMENT COMPANY'S OPPOSITION TO
PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

International Petroleum Investment Company ("IPIC"), an instrumentality of the Government of Abu Dhabi, enjoys "a legitimate claim to immunity from discovery." *Butler v. Sukhoi Co.,* 579 F.3d 1307, 1314 (11th Cir. 2009) (citing *First City, Texas-Houston, N.A. v. Rafidain Bank,* 150 F.3d 172, 176 (2d Cir. 1998)). Accordingly, jurisdictional discovery against IPIC must be "ordered circumspectly" and restricted to information essential to the Court's jurisdictional analysis. *Id.* (citation omitted).

Jurisdictional discovery in this case has now lasted for more than fourteen months. That discovery has been more than sufficient to "verify allegations of specific facts crucial to an immunity determination" with respect to both IPIC and Aabar Investments PJS (formerly known as Aabar Investments PJSC, "Aabar"). *Id.* (citation omitted). In fact, that discovery conclusively establishes that neither Aabar nor IPIC are subject to jurisdiction under the

Foreign Sovereign Immunities Act ("FSIA") because none of Plaintiff's causes of action against either Defendant has a sufficient nexus with the United States. *Saudi Arabia v. Nelson*, 507 U.S. 349, 357 (1993); 28 U.S.C.A. § 1605(a)(2). Accordingly, Plaintiff's current claim that this discovery is required to prove that Aabar is an "organ" under the FSIA is a fool's errand with no purpose other than to delay the resolution of Defendants' Motion to Dismiss, filed almost a year and a half ago.

Moreover, Plaintiff's latest Motion to Compel Production of Documents from IPIC (Dkt. No. 121, the "MTC" or "Motion to Compel"), the twelfth such motion filed by Plaintiff, seeks documents that this Court has already ruled are not necessary, much less crucial, to determination of the issue of whether Aabar is an organ for purposes of the FSIA. (*See* Dkt. Nos. 34, 51-52, 54, 56, 66-67, 87-88, 107, 120, 121.) Plaintiff's alleged justification for disregarding both IPIC's presumptive immunity and this Court's prior Order is based entirely on misstatements of the record and the applicable law. In addition, Plaintiff already received the information that it now claims to require during the depositions of IPIC's and Aabar's corporate representatives. The fact that Plaintiff does not like this information does not justify its baseless and serial requests. This Court should deny Plaintiff's motion and request for fees as improper and award to IPIC the expenses it incurred as a result of having to respond to this meritless motion.

## BACKGROUND

On September 17, 2010, Magistrate Judge Wilson ordered that discovery be limited to the jurisdictional issues in this case. (Dkt. No. 47.) On November 30, 2010, Judge Moody also ordered discovery limited to the issues of whether Defendants IPIC and Aabar were

subject to jurisdiction pursuant to the FSIA and whether Defendant Tasameem was subject to jurisdiction pursuant to the Florida Long-Arm Statute. (Dkt. No. 48.) Despite the Court's explicit limitation on discovery, Plaintiff served extensive document requests (the "First Requests") and interrogatories on IPIC and the other Defendants that far exceeded the scope of the Orders.[1] Defendants timely served their responses, including objections, to Plaintiff's excessive discovery. (Dkt. Nos. 75 at Exhibit ("Ex.") A; 76 at Ex. A; 77 at Ex. A.)

Plaintiff claimed that Defendants' responses were insufficient, and filed three Motions to Compel Production of Documents and three Motions to Compel Complete Interrogatory Answers from Defendants. (Dkt. Nos. 51-52, 54, 56, 66-67.) Defendants filed consolidated oppositions to these motions on February 24, 2011. (Dkt. Nos. 75-77.) A hearing was held on Plaintiff's Motions to Compel on March 11, 2011. The Court ordered that IPIC provide responses to a limited number of Plaintiff's requests. (Dkt. No. 84, the "March 11 Order.") IPIC timely served its responses on March 31, 2011.

On May 26, 2011, Plaintiff served IPIC with Plaintiff's Second Requests for Production of Documents. (Dkt. No. 101 at Ex. B (the "Second Requests" or "Sec. Req.").) After conferring with IPIC regarding its objections to the Second Requests, Plaintiff refused to withdraw its Second Requests but offered minor revisions by letter dated June 16, 2011.

---

[1] To date, Plaintiff has served IPIC with 12 interrogatories and 65 document requests, Aabar with 19 interrogatories and 68 document requests, and Tasameem with 16 interrogatories and 51 document requests pursuant to these Orders. These figures include Plaintiff's Third Requests for Production of Documents served on Aabar and IPIC on November 22, 2011, which focus exclusively on a 2011 loan extended from IPIC to Aabar that can have no relevance to Plaintiff's jurisdictional allegations. *Dole Food Co. v. Patrickson*, 538 U.S. 468, 480 (2003) (finding that an entity's status as an instrumentality is determined at the time the complaint is filed).

(Dkt. No. 101 at Ex. C.) IPIC moved for a protective order on June 22, 2011 (Dkt. No. 101) and also served Plaintiff with objections and responses to the Second Requests (attached hereto as Ex. A). The Court denied IPIC's motion on procedural grounds on July 26, 2011. (Dkt. No. 106.) IPIC served supplemental objections and responses to the Second Requests on July 29, 2011 (attached hereto as Ex. B). Plaintiff waited nearly four months, and then Plaintiff filed this Motion to Compel.

I.  **PLAINTIFF CANNOT JUSTIFY DISREGARDING THIS COURT'S ORDER AND IPIC'S PRESUMPTIVE IMMUNITY**

Second Requests 1-12 (*see* Exs. A and B), which are the subject of this motion, seek board of directors' presentation "packages" and/or board minutes from IPIC showing IPIC's proposal to its management and its decision to: (i) invest in Aabar and convert its mandatory bonds in September 2008 (MTC at 4-10, 17-20 (Sec. Req. Nos. 1-2, 5-6)); (ii) purchase additional bonds from Aabar in May 2010 and convert those bonds (MTC at 11-16, 21-25 (Sec. Req. Nos. 3-4, 7-8)); (iii) loan €302 million to Aabar in December 2009 and amend the loan agreement in March 2010 (MTC at 26-29 (Sec. Req. Nos. 9-10)); and (iv) vote in favor of Aabar's delisting and conversion to a private joint stock company (MTC at 30-34 (Sec. Req. Nos. 11-12)).

Plaintiff's requests for internal board materials and minutes are particularly inappropriate given the Eleventh Circuit's mandate that discovery against a foreign instrumentality must "balance the need for 'discovery to substantiate exceptions to statutory foreign sovereign immunity' against the need to 'protect[] a sovereign's or sovereign agency's legitimate claim to immunity from discovery.'" *Butler,* 579 F.3d at 1314 (citation

omitted).[2] As discussed more fully below, Plaintiff's attempt to explain why it requires the unnecessary and repetitive information sought in the Motion to Compel is based on a distortion of both the record in this case and of the relevant law and cannot justify further intrusion into IPIC's presumptive immunity.

### A. This Court Has Already Denied the Discovery Sought by Plaintiff

As an initial matter, Plaintiff argues that this motion is justified because it seeks documents that were "already ordered for production, but withheld by Plaintiff." (MTC at 6, 9, 13, 16, 18, 20, 22, 25.) This claim is blatantly false. In fact, it is Plaintiff, not IPIC, who is ignoring this Court's directions by flouting the limits imposed at the March 11 hearing.

In his March 11 Order, Judge Wilson granted Plaintiff's motion to compel requests to IPIC for documents "concerning" the investments in and loans to Aabar identified in the Second Requests. (*See* Plaintiff's Motion to Compel Production of Documents from IPIC, Dkt. No. 66 ("First Motion to Compel" or "First MTC"), at 6-7, 9, 26 (moving to compel First Requests 4, 5, 7, and 49); March 11 Order at 3.) During that hearing, however, the Court limited Plaintiff's requests to documents showing the transactions at issue. IPIC fully complied with this Court's instructions by producing the documents underlying each of those investments.[3]

---

[2] Plaintiff relegates *Butler*, the controlling authority, to a footnote that merely states that the decision "did not involve jurisdictional discovery." (MTC at 6 n.3.) This is plainly false. *Butler* explicitly held that "the district court abused its discretion in allowing the case to proceed and granting discovery on the jurisdictional issue." 579 F.3d at 1314.

[3] These documents include the loan and debt capitalization agreements for IPIC's December 2009 loan to Aabar and its March 2010 amendments to those agreements (IPIC 0146, 0153-0170); the purchase agreement, shareholders' resolutions, and conversion notices in relation

The March 11 Order plainly encompassed the discovery Plaintiff now seeks. Plaintiff's 36-page motion boils down to the claim that the board presentations and minutes requested are "crucial" because they will somehow show that IPIC's investments in Aabar "resulted in government instrumentality IPIC gaining complete control over Aabar's activities and investments, including by direction of its public purpose," and that "government control," "public purpose," and "funding" are factors in determining organ status under the FSIA. (MTC at 5-6, 8-9, 12, 15, 17-18, 20, 22, 25, 27, 29, 30, 33.)[4]

There is nothing new here. Plaintiff has alleged since the inception of this lawsuit almost two years ago that IPIC, through Mr. Khadem Al Qubaisi, or the Government of Abu Dhabi, controls Aabar. (Complaint, Dkt. No. 1, ¶ 7; Amended Complaint ("Am. Compl."), Dkt. No. 19, ¶¶ 9, 13.) In its Amended Complaint, Plaintiff specifically alleged that Aabar was an instrumentality "directed" by the Government of Abu Dhabi. (Am. Compl. ¶ 9.) In fact, in its First Motion to Compel, Plaintiff argued that the same documents it now seeks "will show the Government of Abu Dhabi's clear control of . . . Aabar which is 100% owned

---

to IPIC's initial investment in Aabar (IPIC 0045-0076); and purchase agreements, debt capitalization agreements, conversion notices, and other documents evidencing IPIC's increasing stake in Aabar (IPIC 0077-0185).

[4] In its First Requests, Plaintiff did not seek documents related to Aabar's delisting and conversion to a private joint stock company in August 2010 and did not previously move to compel the information sought by Second Requests 11-12. Those requests are improper for the reasons discussed herein. In addition, while the Court gave Plaintiff some latitude with respect to discovery outside of the time frame relevant to the jurisdictional analysis, *Dole*, 538 U.S. at 480, it did not mean to allow Plaintiff to conduct endless, irrelevant discovery, especially where, as here, that discovery involves a presumptively immune foreign sovereign. These newly requested documents are unlikely to reveal information about Aabar's status at the time the Complaint was filed that is not already available to Plaintiff and are thus completely irrelevant.

by IPIC." (First MTC at 6.) Based on this argument, the Court narrowed Plaintiff's request for "corporate records" pertaining to IPIC's investments in Aabar to documents showing these transactions.[5]

Plaintiff cannot now circumvent this result merely by making a conclusory allegation that additional documents are somehow "crucial" and speculating that additional materials sought might reveal a "purpose" not disclosed in the agreements themselves.[6] Neither this Court's grant of jurisdictional discovery nor controlling law entitles Plaintiff to pursue an unwarranted fishing expedition into the documents of a foreign sovereign.

### B. The Deposition Testimony of Defendants' Corporate Representatives Establishes That Aabar Is Not Used for Governmental Purposes

Further distorting the record, Plaintiff alleges that it is entitled to additional discovery because the depositions of Mohamed Ahmed Badawy Al-Husseiny, Aabar's CEO, and Mohamed Hamad Al Mehairi, IPIC's Investment Director, "adduced new and specific facts

---

[5] Plaintiff's argument that the depositions of Defendants' corporate representatives revealed the existence of these board minutes and presentations for the first time and that these items were never requested before should be dismissed out of hand. (MTC at 3, 5, 8, 12, 15, 17, 19, 22, 24, 27.) Plaintiff's prior requests for all of IPIC's board minutes, as well as all "corporate records" relating to IPIC's investments in and loans to Aabar – each of which was limited or denied by this Court – clearly anticipated that IPIC would have some internal documentation of the process by which it considered these loans. (First MTC at 6-7; March 11 Order at 3.)

[6] In fact, Plaintiff's speculation that these documents will reveal hidden evidence of Aabar's "public purpose," or any information other than the investment committee's due diligence (which has no relevance to Plaintiff's claims), is contradicted by the record. (*See* Mohamed Hamad Al Mehairi ("IPIC Corp. Rep.") Dep. at 137:12-137:14 (stating that board presentation "packages" concerning IPIC's investment in Aabar are "basically like any other investments - just the financials, proposals, and recommendation from IPIC"); 134:10-134:14 (stating with respect to later investments in Aabar that "we know the company inside out, so you just need to produce maybe a limited document") (attached hereto as Ex. C).)

which go straight to the heart of jurisdiction under the Foreign Sovereign Immunities Act." (MTC at 5.)  Specifically, Plaintiff claims that these depositions "showed that Defendant IPIC, an admitted Abu Dhabi government instrumentality, uses Co-Defendant Aabar as its non-petroleum commercial and technology investment vehicle to look for opportunities that benefit Abu Dhabi or the UAE." (*Id.*)  Plaintiff argues that the documents it now seeks will confirm its new interpretation. (*Id.*)

Plaintiff blatantly misstates the testimony of Mr. Al-Husseiny and fails to even cite the testimony of Mr. Al Mehairi in support of its claim.  Mr. Al-Husseiny never once testified that "Defendant IPIC, an admitted Abu Dhabi government instrumentality, uses Co-Defendant Aabar as its non petroleum commercial and technology investment vehicle to look for opportunities that benefit Abu Dhabi or the UAE."[7] (MTC at 5.)  In fact, Mr. Al-Husseiny said the exact opposite:

> Q. Is one of the purposes of Aabar to bring technology to Abu Dhabi?
> A. Aabar is a commercial investment company.
> Q. Is it used to bring technology to Abu Dhabi?
> A. I'm not sure I understand the question.  Is it used by who?
> Q. By anyone such as its parent?
> A. Not to my knowledge.

(Mohamed Ahmed Badawy Al-Husseiny ("Aabar Corp. Rep.") Dep. at 184:5-184:12 (Dkt. No. 101 at Ex. D).)  Mr. Al-Husseiny consistently testified during his depositions that

---

[7] In support of its claim that Mr. Al-Husseiny's deposition showed that Aabar is used for a national, public purpose, Plaintiff cites only to remarks that Mr. Al-Husseiny made during an interview about a UAE World Sports Awards Ceremony that was replayed at his deposition. (Aabar Corp. Rep. Dep. at 185:5-190:25; 195:6-12, 197:4-11; 198:14-198:25; 199:1-7 (Dkt. No. 103 at Ex. 2).)  It is not surprising that Mr. Al-Husseiny would promote Aabar's contributions to the UAE economy to an audience of UAE viewers, nor is it relevant.

Aabar's investment decisions are not controlled by IPIC or the Government of Abu Dhabi and that Aabar operates independently from the Government.[8] This testimony is fully corroborated by all of the discovery that Plaintiff received prior to the depositions as well as Mr. Al Mehairi's deposition testimony.[9]

Moreover, as Plaintiff completely fails to mention, both Aabar's and IPIC's corporate representatives fully testified about IPIC's reasons for investing in Aabar – the exact same information that Plaintiff now claims to require. That testimony establishes that IPIC did not invest in Aabar in order to have Aabar serve an exclusive governmental function. For example, Plaintiff claims that it requires presentation packages showing IPIC's proposal to loan €302 million to Aabar in order to "reveal the purpose of IPIC's funding of Aabar."

---

[8] *See* Aabar Corp. Rep. Dep. at 81:4 ("IPIC does not designate what investments Aabar makes."), 105:10-11 ("IPIC is a shareholder in Aabar. IPIC has no involvement in Aabar board matters.") (Dkt. No. 101 at Ex. E); *id.* at 86:11-19 (explaining that when Aabar receives funds from IPIC, "they come in to inject capital" but that capital is not "designate[d] specifically for only one investment") (Dkt. No 122 at Ex. C); IPIC Corp. Rep. Dep. at 83:25-84:1 (stating that "This is not the only reason [IPIC] invest[s] - just because of technology" and that technology investments are pursued "if there is a value added" by them); 84:10-85:16 (explaining that Aabar, not IPIC, acquired Mercedes and that Aabar "invest[ed] in many companies and IPIC supported . . . [Aabar's] growth and strategy - simple as this") (*id.* at Ex. D).

[9] *See* Declaration of Mohamed Badawy Al-Husseiny ("Al-Husseiny Decl."), Dkt. No. 29-2, ¶¶ 4-6 (stating that Aabar does not perform a public activity, the government does not supervise Aabar's affairs, and Aabar is overseen by a Board of Directors appointed by shareholder vote); Aabar's Objections and Responses to Plaintiff's Amended Set of Interrogatories, Response to Interrogatory Number 11, at 7 (Dkt. No. 101 at Ex. F) ("At the time relevant to the jurisdictional allegations in the Amended Complaint, Aabar did not receive financial support from the Government of Abu Dhabi, nor was it supervised by it."); Aabar's Further Objections and Responses to Plaintiff's Amended Set of Interrogatories, Response to Interrogatory Number 5, at 6-7 (Dkt. No. 101 at Ex. G) (stating that Aabar is governed by a Board of Directors appointed by shareholder vote).

(MTC at 26-27.) But Plaintiff questioned both Mr. Al Mehairi and Mr. Al-Husseiny about the purpose of this loan at their depositions. (Aabar Corp. Rep. Dep. at 79:4-81:4 (stating that the purpose of the €302 million loan "was to use it for investments" and that IPIC does not designate what investments Aabar makes) (attached hereto as Ex. E); IPIC Corp. Rep. Dep. at. 139:7-139:17 (stating that the loan was for "general purposes for Aabar's requirements") (*See* Ex. C).) The fact that Plaintiff does not like the information it received during the depositions does not entitle it to misstate or ignore that information and does not justify prolonging this action and further burdening Defendants. Plaintiff has had ample opportunity to develop its claims.[10]

### C. The Discovery Sought Is Irrelevant

Finally, even if the requested discovery establishes, as Plaintiff claims, that IPIC sought "complete control over Aabar," that fact is not dispositive of whether Aabar is an "organ of the Government of Abu Dhabi." IPIC is a "government instrumentalit[y] established as [a] juridical entit[y] distinct and independent from" Abu Dhabi and, as the Supreme Court has held, "should normally be treated as such." *First Nat'l City Bank v.*

---

[10] Plaintiff's attempted justification for its motion to compel Second Request No. 11 is another example of Plaintiff's willingness to completely disregard the actual record in this case. This request asks for a board "package," allegedly mentioned in Mr. Al Mehairi's deposition, regarding IPIC's proposal to vote in favor of Aabar's August 2010 delisting from the Abu Dhabi Stock Exchange and conversion to a private joint stock company. But Mr. Al Mehairi never testified that a board package on Aabar's delisting existed and further stated that if it did, it came from Aabar's team, not IPIC's. (IPIC Corp. Rep. Dep. at 160:15 (responding "I don't know" when asked whether a board package existed for the vote on delisting); 160:25-161:2 (stating that "delisting . . . is not [IPIC's] recommendation to make" and that what is received from Aabar is merely passed on to the Board for approval) (attached hereto as Ex. D).)

*Banco Para El Comercio,* 462 U.S. 611, 627 (1983); *Dole*, 538 U.S. at 474-76 (holding that because Congress "had corporate formalities in mind" when enacting the FSIA, the general rule is that corporate formalities will be respected); *Scheidemann v. Qatar Football Ass'n*, 2008 WL 144846, at *5 (S.D.N.Y. Jan. 15, 2008) (holding that the separate "formal legal status" of entities should be given "significant weight" in the FSIA analysis).  Moreover, as Mr. Al Mehairi testified, IPIC has majority ownership in numerous companies throughout the world.  (IPIC Corp. Rep. Dep. at 127: 21-24 (listing Hyundai, Borealis, Aabar, Nova, and Ferrostaal as significant operating companies) (Dkt. No. 122 at Ex. F).)  If Plaintiff's argument that IPIC's purported national "purposes" for investing in Aabar can attributed to Aabar itself is credited, then all of these investments might be considered organs of the Government of Abu Dhabi, which is clearly incorrect.

Moreover, Plaintiff's claim that Aabar performs a "national" or "public" function, but that Plaintiff requires confidential board materials related to investments in foreign businesses to prove this claim, makes little sense.  Plaintiff is clearly grasping at straws in an effort to avoid the obvious:  Aabar is an "independent commercial enterprise[] . . . acting to maximize profits rather than pursue public objectives." *Patrickson v. Dole Food Co.*, 251 F.3d 795, 808 (9th Cir. 2001), *aff'd in part, cert. dismissed in part*, 538 U.S. 468 (2003).

In addition, even if Plaintiff is correct that Aabar's investments have an incidental benefit to Abu Dhabi, that kind of indirect "benefit" does not transform it into an organ of the government.  More is required.  *See also Scheidemann*, 2008 WL 144846 at *3-5 (finding that an entity "formed for the purposes of promoting football in Qatar and for arranging matches for the Qatari national football team around the world" did not serve a public

function that entitled it to sovereign immunity); *Supra Med. Corp. v. McGonigle*, 955 F. Supp. 374, 379 (E.D. Pa. 1997) (finding that an entity created by an act of Parliament to promote medical and dental education in the United Kingdom, which was 70% funded by the government, and accounted to the government for its spending, was not an organ).

Plaintiff has set forth no new or legitimate justification for further discovery against a presumptively immune foreign instrumentality – especially where, as here, Plaintiff has already received discovery on the transactions in question and this Court has already held that further discovery is outside of the scope of jurisdictional discovery.  Plaintiff's motion should be denied in its entirety.  Moreover, IPIC has unnecessarily incurred expenses, including attorneys' fees, as a result of Plaintiff's repeated filing of meritless motions in this case, including the instant Motion to Compel.  Pursuant to Fed. R. Civ. P. 37(a)(5)(B), IPIC respectfully requests that the Court award IPIC reasonable expenses incurred in opposing this motion, including a reasonable attorney's fee, and impose any other sanctions against Plaintiff that the Court deems appropriate.

## CONCLUSION

Based on the above, IPIC respectfully requests that this Court deny Plaintiff's Motion to Compel Production of Documents from IPIC and order Plaintiff to pay the reasonable expenses incurred in opposing this motion, including a reasonable attorney's fee, and impose any other sanctions against Plaintiff that the Court deems appropriate.

Dated: December 5, 2011

By: /s/ Christi R. Adams  
Christi R. Adams  
Florida Bar No. 0498351  
cadams@foley.com

John R. Hamilton
Florida Bar No. 0774103
jhamilton@foley.com
FOLEY & LARDNER LLP
111 N. Orange Ave., Ste. 1800
Orlando, FL  32801
Telephone: (407) 423-7656
Facsimile:  (407) 648-1743

*Attorneys for Defendants*

*Of Counsel:*

Henry Weisburg
Karen Hart
Jennifer Rimm
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 848-4000
Facsimile: (212) 646-4000

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished this 5th day of December, 2011 via filing with the court's CM/ECF system, to Plaintiff's Counsel, John Dotterrer, Akerman Senterfitt, 125 Worth Avenue, Suite 330, Palm Beach, Florida 33480, via filing with the Court's CM/ECF system.

By: ___*/s/ Christi R. Adams*_____
John R. Hamilton
Florida Bar No. 0774103
jhamilton@foley.com
Christi R. Adams
Florida Bar No. 0498351
cadams@foley.com